**In the Matter of Jesse Lee POWERS et ux.**

**Nos. FS–71–B–38, FS–71–B–39.**

United States District Court, W. D. Arkansas, Fort Smith Division.

March 9, 1972.

## MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

On May 28, 1971, Jesse Lee Powers and wife Romana Helen Powers, filed a Partnership Petition in proper form praying that their partnership and each petitioner be adjudged to be a bankrupt. The forms were prepared by Poe and Goodner, a law firm of Waldron, Arkansas.

Paragraph 4 of the Petition is as follows:

"Your petitioners are willing to surrender all of the property of said partnership and all of their individual property for the benefit of the creditors of said partnership and of their creditors of said partnership and of their creditors, *except such property as is exempt by law,* and desire to obtain the benefit of the Act of Congress relating to bankruptcy." (Emphasis added.)

Schedule B–1, the Statement of all Real Property of Bankrupt, lists "Home and lot in Mena, Arkansas (copy of deed attached)"; and recites that same is subject to mortgage and under suit for foreclosure by Union Bank of Mena, but with an equity in petitioners.

Schedule B–5 (property claimed as exempt from the operation of Act of Congress relating to Bankruptcy) recites that no property is claimed to be exempt by the laws of the United States and only $745.00 worth of personal property is listed as claimed exempt under "Arkansas Constitution Art. 9 Sec. 2."

Schedule A–2 sets forth that the Union Bank of Mena, Arkansas had commenced action in the Chancery Court of Polk County, Arkansas, Case No. 4943, to foreclose its mortgage securing an indebtedness of $19,636.58 plus interest and costs against the home and lot of Bankrupt petitioners in Polk County.

Poe & Goodner, Waldron, Ark., for Bankrupts.

Larry McCord, Fort Smith, Ark., for Trustee.

On September 1, 1971, the Referee in Bankruptcy entered its order as follows:

### ORDER

"On this day comes on to be heard the application of the trustee in bankruptcy for the above styled and numbered bankrupts' estate, presently pending in this Court for an order establishing the superior jurisdiction of this Court and the rights of the Trustee based thereon to claim and have any and all excess monies realized by the foreclosure sale of realty in the Polk County, Arkansas Chancery Court by a secured creditor of said bankrupts' estate, the UNION BANK OF MENA, in a cause pending in said Polk Chancery Court Numbered 4943, and the Court being well and sufficently advised in the premises, and determining that this matter may be heard without notice, and no adverse interest being represented, does hereby order and adjudge:

"That the Polk County, Arkansas, Chancery Court or the Clerk thereof, upon payment to said Court of the purchase price monies had in connection with a foreclosure sale of realty belonging to the bankrupts' estate on August 30, 1971, after withholding an amount sufficient to satisfy the judgment obtained in said Court by plaintiff and costs of the action, should and hereby is ordered to forthwith turn over and pay said excess monies to LARRY R. McCORD, Trustee in bankruptcy for RAMONA H. POWERS, JESSE L. POWERS and JESS POWERS WATER WELL DRILLING COMPANY; and,

"That with the exception of consummating the foreclosure sale, satisfying judgment, paying costs and turning over the excess money to the Trustee in bankruptcy, LARRY R. McCORD, the jurisdiction of the Polk County Arkansas Chancery Court should be and hereby is terminated in said cause, and hereafter, this Court shall have exclusive jurisdiction in connection with the proceedings.

"That a certified copy of this order shall be duly filed in Polk County, Arkansas Chancery Court Case No. 4943, which shall serve as notice to any and all persons, firms, or corporations, which have or could have any claims against the bankrupts' estate, that jurisdiction over the excess monies in said foreclosure sale now rests solely and exclusively within this Court."

On September 14, 1971, before any distribution by Trustee, petitioners filed motion to modify their Bankruptcy Petition to permit them to claim their equity in their homestead as exempt property, the prayer of the petition being as follows:

"WHEREFORE, petitioners pray that their petition heretofore filed herein on May 28, 1971, be modified so as to claim as exempt from the operation of the Act of Congress relating to Bankruptcy, as according to Schedule B–5, the above described real property together with the improvements thereon or the excess proceeds of the sale price thereof, and that they be allowed to invest the excess proceeds of the sale price in another homestead, and for all relief to which they may be entitled."

Apparently no action was taken at that time on the petition to amend.

On November 19, 1971, Larry R. McCord, Trustee in Bankruptcy, filed with the Referee in Bankruptcy his report of Exempt Property setting forth the following property as exempt under Arkansas Constitution Art. 9, Sec. 2:

"Couch - chair, T. V., drapes, 3 bedroom sets, kitchen table 3 chairs, refrigerator, washer, dryer and deep freeze

Less than $500.00"

A copy of this report was mailed to Mr. Don Goodner of the law firm of Poe and Goodner.

On November 30, 1971, the Referee in Bankruptcy entered an order approving Trustee's Report of Exemptions.

On December 22, 1971 the Trustee filed a response in opposition to the petition to amend setting forth the facts that under order of the Bankruptcy Court he had employed attorneys and in-

tervened in the Polk County foreclosure action and had recovered $9,223.20 over and above the secured debt; that he had properly filed his report as to exempt property; that the Bankruptcy Court had passed on it on November 30, 1971 and the Bankrupts had not filed timely objections; and praying that the Bankrupts be denied leave to amend and claim their homestead as exempt.

On January 17, 1972, the Bankrupts by their attorneys filed petition for review of the order approving Trustee's Report, specifically pointing out that the Referee in Bankruptcy had never acted on their application to amend and claim their homestead as exempt.

On January 24, 1972 the Referee entered an order in which he simultaneously denied leave to amend and dismissed the petition for review.

The order of the Referee specifically held that as a matter of fact the omission to claim the homestead in the original schedules was intentional and was not the result of mistake or excusable neglect.

On January 31, 1972 Bankrupts filed petition for review and the matter is before this court upon the Certificate of Referee.

We start out with the assumption that the administration of the Bankruptcy laws must be such as to effectuate their purpose; otherwise, there is no occasion to have Courts of Bankruptcy at all.

9 Am.Jur.2d, "Bankruptcy" Sec. 17, in part is as follows:

"The Bankruptcy Act is to be sensibly construed with a view to effectuating the legislative intent. This is perhaps the most potent of the general rules of statutory construction applied to the Bankruptcy Act. The various provisions of the Bankruptcy Act are therefore to be construed, when reasonably possible, so as to effectuate its purpose and policy, and not so narrowly as to defeat the true intent of Congress. A technical construction conflicting with the fundamental purpose of the Act, or one inconsistent with the liberal spirit which pervades the entire bankruptcy system, will not be applied. The rule is that where the language of the statute is not clear and unambiguous and the true intention of the lawmaking body is not expressed with precision, the reason and purpose of the law, as indicated by its general terms and considered as a whole, must prevail over the literal import of particular words.

"The various provisions of the Bankruptcy Act were adopted in furtherance of a primary purpose to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business or financial misfortunes, and are to be construed, when reasonably possible, in harmony with that purpose so as to effectuate the general policy of the Act. A bankrupt is entitled to a liberal construction of the Act in his favor."

Art. 9, Sec. 3 of the Arkansas Constitution is as follows:

"The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to sale under execution or other process thereon, except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them and other trustees of an express trust for moneys due from them in their fiduciary capacity."

Art. 9, Sec. 5 of the Arkansas Constitution is as follows:

"The homestead in any city, town or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon, to be selected by the owner, provided the same shall not exceed in value the sum of two thousand

five hundred dollars, and in no event shall such homestead be reduced to less than one-quarter of an acre of land, without regard to value."

██ A Court of Bankruptcy has jurisdiction to decide the merits of the bankrupt's claim to exemptions, but as a rule has no jurisdiction over the property it determines exempt beyond that necessary to set it aside to the bankrupt.

An annotation beginning at page 501 of 145 A.L.R. discusses the subject of homestead claims where the owner of property in which the claim is asserted was adjudicated a bankrupt. On page 502 of the annotation we find that Arkansas is referred to as one of the states with extremely liberal homestead laws . . . "under which a homestead is a vested estate" . . . and the "homestead can be claimed even after sale under execution."

In Bank of Sun Prairie v. Hovig (W. D.Ark.1963), 218 F.Supp. 769, Honorable John E. Miller, now Senior Retired District Judge, held that under Arkansas law, a homestead may be acquired, regardless of rights of creditors, citing Chastain v. Arkansas Bank & Trust Co. (1923), 157 Ark. 423, 249 S.W. 1, and Ferguson v. Little Rock Trust Co., 99 Ark. 45, 137 S.W. 555. See also In re Lippow, 7 Cir., 92 F.2d 619.

"Exempt property constitutes no part of the bankrupt estate, and the jurisdiction of the bankruptcy court is limited to the ascertainment and setting off to the bankrupt of the exempt property. . . . " Collier on Bankruptcy 1–A, ¶ 6.05.

██ While the title to exempt property remains in the bankrupt, the trustee has the right to possession until exemptions are set off.

██ It is also well established that exemption can be waived by omission of claim for exemption by the bankrupt in his schedule. Sec. 7A(8) provides that the bankrupts' claim must be made in a verified schedule of his property, which he is required to file; and in the case of a voluntary proceeding such as the case under consideration, the bankrupt is required to file this schedule with his petition.

██ General Order 11 permits an amendment to schedules on the application of the bankrupt where he has through mistake or excusable neglect failed to claim such exemption, but an amendment will not be permitted where it does not appear that an error or mistake was made, or where the failure was intentional—or even in the case where it is apparent that the exemption, if included in the schedules will be of no value to the bankrupts.

██ The application for amendment should be reasonably made, and an amendment should be permitted upon a proper showing, if the application is made within a reasonable time while the property is still in the hands of the trustee, unaffected by adverse rights. And when allowed, the amendment relates back to the time of filing the petition. (Collier 6.19)

In re Seeley Tube and Box Company, 219 F.2d 389 (1955 C.A. 3rd Cir.) the Court held that:

"Amendments to the schedules are specifically authorized by General Order 11 in Bankruptcy, 11 U.S.C.A. following section 53, and are liberally allowed when required in the interest of justice. Such amendment was in the interest of justice here. For otherwise the Government merely because of the debtors failure to schedule its claim would be wholly precluded from participating in the distribution of the funds provided for by the arrangement. . . ."

In the case of Smith v. Thompson, 213 F. 335 (8th Cir. 1914) the Court stated that:

"In every court the administration of an exemption law should comport with the beneficent spirit that

prompted its enactment. A court of equity especially should not attempt to defeat the exemption by niceties in practice. It should be helpful to those whose condition requires them to invoke it."

In the case at bar, the property is still in the hands of the Trustee. The Bankrupts have shown no bad faith. The Bankrupts, since September 14, 1971 have been praying permission to amend their schedules and claim their Constitutional right to homestead exemption. The Trustee is not surprised by the request. The Bankruptcy Court is not surprised. The attorneys for the bankrupts have been before the Court repeatedly in an earnest endeavor to claim for their clients the property exempt to them under law.

 This Court finds no support in the record for the specific finding by the Referee that there has been an intentional refusal to claim the exempt property. The record shows that it was described as "Home" under foreclosure. The record is replete with prayers of the Bankrupts and their attorneys to be permitted to amend.

In the recent case of D. H. Overmyer Co., Inc., of Ohio, et al. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124, February 24, 1972, Justice Blackmun, writing for the United States Supreme Court said:

"We do not presume acquiescence in the loss of fundamental rights," and cites Ohio Bell Tel. Co. v. Public Utilities Comm'n, 301 U.S. 292, 307 [57 S. Ct. 724, 81 L.Ed. 1093] (1937).

In the same case in a concurring opinion Mr. Justice Douglas with Justice Marshall concurring said:

"I agree that the heavy burden against the waiver of constitutional rights, which applies even in civil matters, Ohio Bell Tel. Co. v. Pub. Utilities Comm'n, 301 U.S. 292, 307 [57 S.Ct. 724, 731, 81 L.Ed. 1093]

(1937); Aetna Ins. Co. v. Kennedy [to Use of Bogash], 301 U.S. 389, 393 [57 S.Ct. 809, 811, 81 L.Ed. 1177] (1939), has been effectively rebutted by the evidence presented in this record."

In re Carl, D.C., 38 F.Supp. 414 (1941), in an early Arkansas bankruptcy case the court in discussing homestead rights said:

"The bankrupt cannot be denied her constitutional right to a homestead, unless waived in a manner recognized by law."

In the recent case of Ray Dodge, Inc. v. Moore, 251 Ark. 1036, 479 S.W.2d 518, which was decided by the Arkansas Supreme Court, February 21, 1972, the court defined "waiver" as follows:

"Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. Sirmon v. Roberts, 209 Ark. 586, 191 S.W.2d 824. In the cited case, we said that conduct amounting to waiver should be carefully inspected and all evidence upon the subject impartially scrutinized."

 It would be unconscionable to hold that Bankrupts are precluded from claiming exemption of homestead because they failed to appeal from an order of the Bankruptcy Court allowing the personal property as exempt. Continuously subsequent to September 14, 1971 Bankrupts have been pleading for the right to amend. Justice demands that they be afforded a hearing on the homestead claim.

The case of Thompson v. Powell, 413 F.2d 276 (1969), a case from the 5th Circuit treats the principles involved

herein. At page 277 of that opinion is found the following language:

"We agree that the Referee has discretion to refuse an amendment that would unduly complicate the administration in bankruptcy, but this is not such a case. The bankrupts represent to us that at the hearing on the motion to amend they offered to reimburse the estate for expenses incurred by the Trustee. Bankruptcy General Order 11 specifically authorizes amendments to schedules, and they should be liberally allowed when required in the interest of justice. 'No bankrupt should be deprived of his exemptions by a narrow and strict interpretation of laws which were passed for his benefit and prompted by a wise and humane public policy.' In re Fowler, 1940, D.C.Pa., 35 F.Supp. 9, 10.

"The exemption claims were not a matter of surprise to the Referee and were not omitted from the schedules in bad faith. On the contrary, they were discussed at some length at the first meeting of creditors. In any event, the Referee could and should have entered an order permitting the amendment on the condition that the bankrupts reimburse the Trustee for his out of pocket and administrative expenses. 2 Remington on Bankruptcy § 578 (Henderson ed. 1956). An amendment on such terms would have been in the interest of justice here.

"We reverse with directions to permit the bankrupts to amend their original schedule to specify the F–100 ½ ton pickup truck, 6 cylinder, as exempt property, on the condition that out of the proceeds of the sale of the truck received by the Trustee he be paid his out of pocket and administrative expenses, the balance to be set aside to the bankrupts as the proceeds of their exempt property."

This case is remanded to the Referee with directions to permit the amendment to claim homestead exemptions and for proper proceedings subsequent to receiving the amendment.