Gerald B. Graham, Ravenna, Ohio, for defendants.

Kathryn A. Belfance, Akron, Ohio, trustee.

## FINDING IN THE MATTER OF JACK W. DORRICOTT

H. F. WHITE, Bankruptcy Judge.

The duly elected trustee, Kathryn Belfance, filed a complaint to recover certain property that the debtor had in his possession and control on the date of filing his petition in bankruptcy on October 17, 1979.

The debtor, who is a lecturer at the University of Akron and a consultant on marketing and finance matters, and his son, Tom Dorricott, filed an answer to said complaint claiming the said proceeds were exempted as provided for under 11 U.S.C., section 522 of the Bankruptcy Code and section 2329.66 of the Ohio Revised Code as

**In the Matter of Jack W. DORRICOTT, Debtor.**

**Bankruptcy No. 579–874.**
**Adversary No. 580–0009.**

United States Bankruptcy Court, N. D. Ohio.

July 8, 1980.

amended, and further that Tom Dorricott alleges that the funds on deposit in bank account 2811–2821 at the First National Bank of Akron, Ohio are funds belonging to him and that on or about October 17, 1979, he was holding no funds in said account belonging to his father, the debtor.

The matter was duly set for trial. The only witness appearing was the debtor, Jack W. Dorricott.

The Court makes the following finding of fact from the testimony and exhibits submitted.

1) Jack W. Dorricott, the debtor, filed a voluntary petition in bankruptcy on October 17, 1979.

2) The debtor failed to list in his schedules the marketing-consulting fee of Three Hundred Dollars ($300.00) due him which was unpaid at the time of the filing of the bankruptcy.

3) On Schedule B–2, the debtor indicated there was no cash on hand nor did he have any deposit of monies at any banking institution.

4) On Schedule B–4 he claimed personal household furnishings, appliances, household goods, books and wearing apparel to the extent of Twelve Hundred Dollars ($1200.00). Also he claimed books and clothing as used in his trade to the extent of Seventy Five Hundred Dollars ($7500.00), and equity in a 1977 Toyota which was transferred to his son in September, 1978.

5) The debtor did not schedule any creditors under A–2 but listed eleven (11) creditors under A–3 as being unsecured, and totaling Eight Thousand Eight Hundred Ninety Dollars and Twenty Two Cents ($8,890.22).

6) The first meeting of creditors was held on November 13, 1979 and the debtor subsequently amended his schedules on December 20, 1979 to list three additional creditors as unsecured, totaling Thirteen Thousand Two Hundred Fourteen Dollars and Fifteen Cents ($13,214.15).

7) The debtor admitted he was aware that he was obligated to these three creditors on the date of filing the petition in bankruptcy, but he knowingly did not list them as he intended to pay them after filing the petition in bankruptcy and did subsequently reaffirm these debts.

8) The debtor admitted that he was obligated to pay his wife's attorney fees as ordered by the Court in Michigan, however, said counsel was not listed as the debtor was not aware of the amount, but the debtor knew he was obligated to pay said counsel.

9) The debtor admitted opening an account with First National Bank of Akron in his name in January or February, 1979, and that he subsequently had said account made into a joint account in his own name and in the name of his son, Tom Dorricott, who was a dependent and a student at Wooster College.

10) Subsequently, the account was closed by the debtor and a new account at the First National Bank 2811–2821 was opened in the name of Tom Dorricott, 924 Sugar Road, Copley, Ohio 44321. The debtor deposited said funds into the account which came from his salary and unemployment compensation from the State of Michigan, and that on the date of the filing of the petition in bankruptcy, there was in this account One Thousand Nine Dollars and Twenty Five Cents ($1,009.25) which were assets owned by this debtor which he failed to disclose in his petition.

11) The debtor admitted that he prepared checks for disbursement from said account and had his son execute said checks, and that disbursements from said account were for payment of the obligations of the debts as indicated in Defendant's Exhibit 8, being check 152 to Juanita Dorricott in the amount of One Hundred Dollars ($100.00) for support payment; check 154 to Postal Finance in the amount of One Hundred Fifty Dollars ($150.00) dated October 28, 1979; check 151 to Oscar Fraley in the amount of Three Hundred Fifty Dollars ($350.00) for rent dated October 16, 1979; check 149 to Attorney Gerald B. Graham for bankruptcy fees; check 142 in the amount of Twenty Dollars ($20.00) to the

University of Akron Faculty Club; check 145 to Michigan National bank in the amount of One Hundred Twenty Three Dollars and Forty Five Cents ($123.45), etc.

12) The Court finds that on March 10, 1980, approximately two (2) weeks after the first pre-trial which was held February 25, 1980, and after the objection to exemptions by the trustee on January 15, 1980, the debtor amended the claim of exemptions on March 10, 1980 to claim said exemption as allowed under the Ohio Revised Code 2329.-66.

## ISSUE

May the debtor claim exempt property which he knowingly concealed and failed to disclose to the trustee under 11 U.S.C. § 522 of the Bankruptcy Code and Ohio Revised Code 2329.66 which normally would be exempt had it been properly scheduled and claimed?

## DISCUSSION OF LAW

█ A debtor may not claim exempt property which he has knowingly concealed from the trustee. To allow the debtor to claim exemptions out of such property would contravene the intentions of Congress set forth in section 522(g)(1) of the Bankruptcy Code.

11 U.S.C. § 522(g)(1) provides:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property;

Section 522(g)(1) is analogous to a similar provision in section 6 of the Bankruptcy Act of 1898 as amended. Section 6, 11 U.S.C. § 24, was amended in 1938 as part of the Chandler Act and was designed to resolve the dispute as to whether the debtor might amend his schedule to claim exemptions out of property recovered by the trustee. Section 6 clearly prohibited an allowance for exemptions out of property which the debtor had fraudulently conveyed or concealed from the trustee:

This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition . . . *Provided however,* That no such allowance shall be made out of property which a bankrupt transferred or concealed which is recovered . . .

11 U.S.C. § 24 (repealed 1978).

Both section 6 of the Bankruptcy Act and section 522(g)(1) of the Bankruptcy Code should be interpreted in conjunction with section 521 of the Bankruptcy Code and Rules 108 and 403 of the Bankruptcy Rules of Procedure. These provisions place an affirmative statutory duty on the debtor to cooperate with the trustee. Section 521 requires that the debtor list his creditors, file a statement of his financial affairs, and turn over property of the estate to the trustee. Rule 108 provides that the statement disclosing his financial affairs must be complete and requires that the debtor list ". . . all his debts and all his property." Rule 403 further specifies that the debtor must claim his exemptions on the original schedule of assets filed pursuant to Rule 108. Failure to comply with these duties may result in a forfeiture of the exemptions that might otherwise have been claimed, 11 U.S.C. § 522(g)(1), or even in a denial of discharge, 11 U.S.C. § 523.

In the matter before the Court, the debtor knowingly failed to meet these statutory requirements. He maintains that the incomplete statement of his financial affairs resulted from a misunderstanding with regard to his duties. However, the debtor is a highly-educated man who keeps fastidious records. He is a university instructor and has twenty years' experience in the insurance business. Many less sophisticated

debtors are able to understand the simple directions clearly printed on the forms for filing bankruptcy. The Court is unable to accept the debtor's explanation that he misunderstood his duties.

Moreover, the debtor admitted to a series of acts which viewed cumulatively evince a pattern of concealment. Not only did he knowingly fail to disclose the existence of the disputed funds, he also neglected to list a consulting fee due him and failed to schedule several creditors he intended to pay in full. Most importantly, however, the debtor transferred both the disputed funds and an automobile to his son, but retained the use and possession of these assets for himself. He effectively put the assets beyond the reach of his creditors, yet continued to control the property which he had transferred. This arrangement depicts a constructive trust and signifies fraud.

The principle that a constructive trust constitutes fraud is firmly entrenched in the law. The ancient decision in *Twyne's Case*, 76 Eng.Rep. 809 (1601), reprinted in J. Hanna & J. MacCachlan, Creditors' Rights 149–52 (4th ed. 1957), analyzes the identical situation presently before the Court:

> . . . and it is to be presumed that the father, if he had not been indebted to others, would not have dispossessed himself of goods and subjected himself to his cradle; and therefore it shall be intended that the transfer was made to defeat creditors . . . a trust implied is, when a man makes a gift without any consideration, or on a consideration of nature or blood only . . . .. *Id.* at 151.

Modern statutes have codified this principle. For example, section 1335.01 of the Ohio Revised Code provides, "All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void . . . ." Similarly, section 4 of the Uniform Fraudulent Conveyance Act provides that a ". . . conveyance made by a person who is . . . insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance was made without adequate consideration."

These standards are also set forth in section 548 of the Bankruptcy Code:

§ 548 Fraudulent transfers and obligation

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548 (1978).

The account in the name of the debtor's son was opened while the debtor was experiencing financial difficulties because of his recent divorce and career changes. He deposited all his available funds into the account, closed out the account which he held jointly with his son, and paid his living expenses by checks which his son signed. When he filed a petition in bankruptcy a mere three months later, he failed to reveal the funds.

It was only through the efforts of the trustee in her examination of the debtor that the concealed funds were discovered. Had the debtor not subsequently amended his schedule to claim exemptions from the funds, the trustee could have avoided the

transfers of cash to the son's bank account under section 548 and could have recovered the funds for the estate under section 550. Consequently, section 522(g) is applicable and its prohibition on the allowance of exemptions out of concealed property must govern the issue.

The analogous provision in section 6 of the Bankruptcy Act, 11 U.S.C. § 24, repealed (1978), has been applied to similar fact patterns. For example, in *Gardner v. Johnson*, 195 F.2d 717 (9th Cir. 1952), the homestead exemption was invalidated because the debtor had fraudulently conveyed the property to her daughter and had omitted a claim for exemptions from her schedule. The court held that ". . . the conveyance by the bankrupt was an abandonment of any right of homestead." *Id.* at 720.

Similarly, the court in the matter of *In re Sherk*, 108 F.Supp. 138 (N.D.Ohio 1952), denied the debtor a cash exemption out of funds brought into the estate by the trustee through the avoidance of a fraudulent transfer made by the debtor prior to bankruptcy. The Court stated, "Had it not been for the diligence of the trustee in recovering the funds and property which the bankrupt had placed beyond his jurisdiction and out of his possession, there would be no fund . . . out of which the bankrupt could claim any exemptions." *Id.* at 142.

It must also be noted that this Court sits in equity, 28 U.S.C. § 1481 (1978), and that the debtor is under a duty to do equity before he can claim his right to exemptions. *Stewart v. Ganey*, 116 F.2d 1010, 1011 (5th Cir. 1941). This factor was considered in the case of *Hyman v. Stern*, 43 F.2d 666 (4th Cir. 1930):

> While it is well-established law that exemptions in behalf of unfortunate debtors are to be liberally construed in furtherance of the object of such statutes, so also, must it be remembered that courts of bankruptcy proceed upon equitable principles and should no more sustain a positive fraud than would a court of equity." *Id.*

The debtor's actions undermine the fundamental purposes of bankruptcy law which seeks to treat all creditors fairly. *Chicago, Burlington and Quincy Railroad Co. v. Hall*, 229 U.S. 511, 515, 33 S.Ct. 885, 886, 57 L.Ed. 1306 (1913), and to provide the honest debtor with a fresh start, *Hyman v. Stern*, 43 F.2d 666, 668 (4th Cir. 1930). For these reasons, the debtor may not now claim exemptions out of the One Thousand Nine Dollars and Twenty Five Cents ($1,009.25) on deposit in bank account 2811–2821 at the First National Bank of Akron on the date of the filing of the petition in bankruptcy.

## CONCLUSION

It is the conclusion of this Court that the complaint of the trustee to recover said funds in the amount of One Thousand Nine Dollars and Twenty Five Cents ($1,009.25) must be sustained and that the application of the debtor to claim said funds exempt must be denied.