**In re Ace H. PARK, Debtor.**

**Bankruptcy No. 97–41034–DRS.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 17, 2000.

Reedy Macque Spigner, Plano, TX, for debtor.

Joyce Lindauer, Dallas, TX, trustee.

## OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court is the Trustee's Objection To Debtor's Property Claimed As Exempt ("Objection") filed by Joyce Lindauer, the duly-appointed Chapter 7 Trustee of the above-captioned Bankruptcy Estate and Amended Creditor's Objection To Exemption filed by Michael Maniscalco, a creditor and party-in-interest. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The Debtor filed for relief under Chapter 7 on March 31, 1997 and Joyce Lindauer was appointed Chapter 7 Trustee to administer the assets of the case (the "Trustee"). Included among his Schedules and Statement of Financial Affairs was Schedule C—his schedule of property claimed as exempt ("Schedules"). The Debtor elected the State of Texas exemptions pursuant to 11 U.S.C. § 522(b)(2) and the Texas Property Code, Sections 41 and 42. The Debtor's originally filed Schedule C lists only his homestead. No value for same or for the debtor's interest in it appeared. No party filed an objection to the Debtor's claim of exemptions. At the May 23, 1997 § 341 meeting of creditors, according to the records provided to this Court, the Debtor indicated that his residence was owned by a living trust known

as the Ace Park Living Trust and that the house was so encumbered as to be of no value to the bankruptcy estate. Of even date with the § 341 meeting of creditors, the Court's docket reveals that the Debtor amended his Schedules, including Schedule C ("Amended Schedules"). The Amended Schedules mysteriously disappeared from the Court's files at some time prior to the hearing on the Trustee's Amended Motion To Reopen the case. On June 25, 1997, Michael Maniscalco, a creditor and party-in-interest ("Maniscalco"), filed an Objection to Exemption objecting to the Debtor's claim of the homestead as exempt property on the grounds that the homestead was "part of a spendthrift trust and is not part of the estate". The objection was served upon the Trustee and a hearing was set. In the interim, on July 28, 1997, the Court entered an order of discharge under § 727 and the case was closed. There were no appearances at the August 13, 1997 hearing on the Objection to Exemption and the Court dismissed it [1]. Thereafter, the Trustee discovered that the Trust also owned shares of stock in various corporations, bank accounts, vehicles, a boat and insurance policies and moved the Court to reopen the case pending investigation into the possible concealment or transfer of assets by the Debtor both before and after the filing of the Chapter 7 petition. The motion was granted, following a trial on the merits. The United States Trustee re-appointed Joyce Lindauer, as Trustee. Thereupon, the Debtor amended his schedules for the third time, including Schedule C, adding the Debtor's interest in the following:

(1) his homestead valued at $95,000;

(2) a computer and adding machine (debtor's interest) valued at $225.00;

(3) an IRA account (debtor's interest) valued at $6,000.00;

(4) household goods (debtor's interest) valued at $125.00;

(5) wearing apparel (debtor's interest) valued at $50.00; and

(6) sports equipment (debtor's interest) valued at $120.00.

The Debtor also added life insurance benefits payable in the event of his death in an unknown amount, two life insurance policies also valued as "unknown" amounts and, under Texas Property Code § 41.00211, the Ace Park Living Trust valued at $10,012.90. Both the Trustee and Maniscalco objected to the Debtor's claim of exemptions. In particular, the Trustee objected to the Debtor's claimed exemption of the residential property on the grounds that the Debtor could not claim as exempt property he did not own, the Debtor having also claimed the property was owned by the Ace Park Living Trust. Such an asset, she opined, failed to meet the qualifications of the Texas Property Code for property claimed as exempt. The Trustee also objected to the Debtor's claim of stock in his various closely held corporations. Maniscalco objected to the exemption of the residential property on the same grounds as the Trustee and objected to the exemption of the Trust property on the theory that the Debtor was estopped from claiming as exempt property that had not been scheduled.

Prior to trial, Mike Maniscalco, as pre-petition judgment creditor of the Debtor, filed a Complaint to revoke the Debtor's discharge under § 727(d), alleging that Debtor shifted funds and assets employing the Debtor's business entities, both before and after the petition date, in order to defraud the bankruptcy estate and its creditors. As a result, the Debtor's discharge was revoked.[2] In the interim, this matter came before the Court pursuant to regular setting. At that time, the parties

---

**1.** At this point in time, the debtor is discharged, the case is closed, there are no objections to the exemptions hence the property on Amended Schedule C would leave the estate by operation of law and revert in the debtor pursuant to *Taylor v. Freeland &*

*Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, 26 C.B.C.2d 487 (1992).

**2.** The Debtor's appeal of the order revoking discharge was denied.

agreed that the objections could be ruled upon based upon the briefs filed and the matter was taken under advisement.

Subsequent to the trial, but absent leave of the Court to do so[3], the Debtor filed his Fourth and Fifth Amended Schedules.[4] Schedule C in the Fourth Amended Schedules differs substantially from all previous incarnations. The Ace Park Living Trust has been removed. The homestead is valued at $107,000 with the Debtor's interest in same being valued at $25,000.00. An IRA account with Charles Schwab valued at $9,600.00 has appeared accompanied by horses (number and values unknown), cameras valued at $120.00, a wedding ring valued at $150.00, a term policy at Trans-America, additional office equipment and a fur valued at $125. Household furnishings which were previously valued at $125.00 were revised to $6,500.00. The Trustee filed an objection to the foregoing exemptions claimed by the Debtor based upon concealment, bad faith, prejudice to the creditors of the estate and the Debtor's interference with the administration of the estate.

## DISCUSSION

A debtor may not claim as exempt property which he knowingly concealed and failed to disclose to trustee which normally would be exempt had it been properly scheduled and claimed. To allow the debtor to claim exemptions out of such property would contravene the intentions of Congress set forth in section 522(g)(1) of the Bankruptcy Code. *Matter of Dorricott,* 5 B.R. 192, 194 (Bankr. N.D.Ohio 1980).

Federal Rule of Bankruptcy Procedure 4003(c) provides that "[t]he objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections." As the objecting parties, the Trustee and Maniscalco have the burden of showing that the Debtor is improperly claiming property as exempt. See, *Shelley v. Kendall (In re Shelley),* 184 B.R. 356, 360 (9th Cir. BAP 1995). However, as one court suggested in dicta: "while the Trustee has the burden of proving that exemptions are not properly claimed, the initial burden is with the Debtor to establish that the exemption, as claimed, is of the type covered by the statute." *In re Gregoire,* 210 B.R. 432, 436 (Bankr.D.R.I.1997).[5] "If the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand." *In re Ciotta,* 222 B.R. 626, 629 (Bankr.C.D.Cal. 1998).

In this case, the Court finds based upon the pleadings and the record in this case that the Trustee has demonstrated by a significant preponderance of the evidence the Debtor's blatant dishonesty in preparing his schedules from which may be inferred an attempt to hinder the

---

**3.** The Fourth and Fifth amended schedules fall under the restrictions imposed by Federal Rule of Civil Procedure 15. F.R.Civ.P. 15(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

**4.** The fifth amendment amends Schedule F only.

**5.** In *Gregoire,* the debtor's exemption on account of personal bodily injury was denied because he failed to present sufficient evidence that he had suffered a permanent injury. *Id. Gregoire* unwisely reallocates the burden prescribed by Rule 4003(c) and reverses the presumptive validity of the scheduled exemption. The prima facie presumption is that a claimed exemption is correct. *In re Ciotta, Supra* citing to *In re Dunn,* 215 B.R. 121, 130 (Bankr.E.D.Mich.1997).

Trustee's administration of assets of the estate and any distribution to creditors.[6] The Court has examined the Debtor's schedules dated March 31, 1997, May 23, 1997 [7], both of which were not objected to by any party, as well as the Debtor's schedules dated July 10, 1998 (which were objected to timely, giving rise to the trial). The Court has also examined the Debtor's Fourth and Fifth Amended Schedules in the record filed after the trial date. The Court acknowledges that amendments to a debtor's schedules are to be liberally allowed when required in the interest of justice. *In re Seeley Tube & Box Co.*, 219 F.2d 389 (C.A.N.J.1955), *cert. denied* 350 U.S. 821, 76 S.Ct. 46, 100 L.Ed. 734. *See also* Federal Rule of Bankruptcy Procedure 1009.[8] Therefore, the mere number of amendments alone does not impugn the Debtor's veracity.[9] However, in the case before this Court, the Debtor's schedules appear as a constantly shifting landscape. The Court cannot impute any level of accuracy or truth to them. The Court concludes that the Debtor has filed whatever appeared to him as being in his best interest as the case developed. *See In re Talmo*, 185 B.R. 637 (Bankr.S.D.Fla.1995).[10] Previously, the Debtor's discharge was revoked, following a full trial on the merits which revealed fundamental inaccuracies in the Debtor's schedules. The revocation of discharge is, nonetheless, an issue apart from that before this Court and not dispositive of the Debtor's entitlement to his exemptions.

■■■■■ Under 11 U.S.C. § 521, a debtor is required, among other duties, to file schedules of assets and liabilities. One seeking benefits under Title 11 of the Bankruptcy Code has a positive duty to disclose for the benefit of one's creditors all of one's interest and property rights.

6. The Court distinguishes the evidence respecting the individual values of the items of property listed in the Schedules from the evidence respecting the credibility of the Schedules overall. The evidence before this Court consists of copies of portions of the Debtor's various schedules and an uncertified copy of the A.H. Park Living Trust Agreement. There is no evidence from which this Court can ascertain the value of any of the property listed on the Debtor's schedules beyond those values assigned by the Debtor. One fact that weighs against the Trustee is that no evidence was adduced from which this Court can ascertain ownership, liens against or interests in the Debtor's residential property/homestead e.g. deed records, etc., or any of the other property subject to the Debtor's claims of exemption and the objections.

7. The Second Amended Schedules appear on the Court's docket indicating that they were filed. They disappeared from the Court's files. The Court has reviewed copies of the Debtor's Second Amended Schedules which appear in the Court's record as exhibits provided by the Debtor.

8. Amendment to schedules will not be permitted where it does not appear that error or mistake was made, or where failure was intentional, or where it is apparent that exemption, if included in schedules, will be of no value to bankrupt. *In re Powers*, 339 F.Supp. 1068 (W.D.Ark.1972). Bankruptcy rule providing for amendments of voluntary petition, list, schedule, or statement as matter of course at any time before case is closed is permissive one, with amendment disallowed in limited instances of bad faith by debtor or where there is prejudice to creditors. *In re Butcher*, 189 B.R. 357 (Bkrtcy.D.Md.1995), *affirmed* 125 F.3d 238. In a Chapter 11 case converted to a Chapter 7, the Court ruled that despite the permissive language of the rule allowing amendments to bankruptcy schedules without court permission at any time during case, the court has discretion to deny leave to amend if the proposed amendment would prejudice a creditor; if the debtor has acted in bad faith; or if the debtor has concealed assets. Any one of the foregoing factors standing alone would be sufficient grounds to strike an amended claim of exemption. *In re Talmo*, 185 B.R. 637 (Bkrtcy. S.D.Fla.1995).

9. Indeed, amended exemption claims are generally allowed, absent bad faith, concealment of property, or prejudice to creditors. *In re Fournier*, 169 B.R. 282 (Bankr.D.Conn.1994).

10. The " 'now you see it, now you don't' " exemption strategy was described by the *Talmo* Court. In *In re Talmo*, the debtor sought to amend his schedules to claim assets previously concealed and the Court struck the amendment from the record and denied the debtor the exemption sought.

*See In re Hannan,* 127 F.2d 894 (7th Cir.1942) and *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 (3rd Cir.), *cert. denied* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). The debtor is required to file comprehensive schedules of creditors, assets and liabilities, current income and expenditures, and a statement of financial affairs, § 521(1), either with the petition or within 15 days thereafter, unless the time is extended for cause shown, Bankruptcy Rule 1007(c). *In re Timbers of Inwood Forest Assoc., Ltd.,* 793 F.2d 1380, 1409.[11] The obligation is strict and the law requires such schedules to be as complete and accurate as possible. The burden is on the debtors to complete their schedules accurately. *In re Faden,* 96 F.3d 792 (5th Cir.1996) *[reh. denied]* citing to *Matter of Springer,* 127 B.R. 702, 707 (Bankr.M.D.Fla.1991).

The Court in *In re Mohring,* a lien avoidance case, described the debtor's duty to file complete and accurate schedules as "paramount". *In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992). A paramount duty of the debtor is the duty to file a list of creditors, schedules of assets, liabilities, income, and expenditures, and a statement of financial affairs. 11 U.S.C. § 521(1). The debtor must file a list of property claimed as exempt. 11 U.S.C. § 522(1). And in a chapter 7 case, the debtor must cooperate with the trustee in preparing a "complete inventory of the property of the debtor ..., unless such an inventory has already been filed." Fed. R.Bankr.P. 2015(a) and 4002(4); 11 U.S.C. § 521(3) (duty to cooperate with trustee in preparing inventory). These matters are at the heart of the bankruptcy system, and their importance can hardly be understated [SIC]. The proper "operation of the bankruptcy system depends on honest reporting." *Payne v. Wood,* 775 F.2d 202,

205 (7th Cir.1985), *cert. denied* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986). *In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Ca.1992). Numerous cases hold that the debtor has a duty to prepare schedules carefully, completely, and accurately. E.g., *In re Jones,* 134 B.R. 274, 279 (N.D.Ill.1991); *In re Baumgartner,* 57 B.R. 513, 516 (Bankr.N.D.Ohio 1986); *In re Mazzola,* 4 B.R. 179, 182 (Bankr. D.Mass.1980). *Mohring, Ibid.*

■ The required degree of specificity increases when itemizing property that is claimed as exempt under section 522. Two purposes are served by detailed lists of property claimed as exempt. First, claims of title are easily established on the day of discharge. Second, parties in interest are able to decide which claims to challenge. *Mohring,* Supra at 395, citing to *Payne v. Wood,* 775 F.2d at 206 and *Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316, 1319–20 at n. 6.

■ As the *Mohring* Court noted:
The Seventh Circuit discussed why the debtor must claim exemptions with specificity as follows:

> The requirement that the debtor list the property [on the schedules] serves at least two functions. One is to settle claims of title, so that on the day of discharge everyone knows who owns what. The other is to allow the trustee to decide which claims to challenge. Debtors are not perfectly trustworthy, and unless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme. *Payne v. Wood,* 775 F.2d 202 (1985) (emphasis added). This approach is consonant with that of the Ninth Circuit. *Hyman,* 967 F.2d 1316, at 1319–20.[12]

11. *Cert. granted and judgment aff'd. in United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740, 56 USLW 4107, 17 Collier Bankr.Cas.2d 1368, 16 Bankr.Ct.Dec. 1369, Bankr.L.Rep.P 72, 113 (1988).

12. The *Mohring* Court relied upon *Payne v. Wood* and the *Hyman* Court for its rationale:

[t]he importance of providing detail sufficient to enable parties to decide whether to object is a corollary of the Supreme Court's decision in *Taylor [Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280, 26 C.B.C.2d 487 (1992)]. The premium on time-

Non-compliance with mandated disclosure may result in dismissal of a case, non-dischargeability of unscheduled debts, judicial estoppel with respect to claims, or the complete loss of the debtor's discharge.[13] The law is profuse with precedent that bankruptcy debtors have an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. Bankr.Code, 11 U.S.C.A. § 521(1). *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999). Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized. *See generally Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988). *See also Ryan Operations, G.P. v. Santiam–Midwest Lumber Co. (In re Ryan)*, 81 F.3d 355, 362 (3rd Cir.1996) ("disclosure requirements are crucial to the effective functioning of the federal bankruptcy system"); *Louden v. Federal Land Bank of Louisville (In re Louden)*, 106 B.R. 109, 112 (Bankr.E.D.Ky.1989) ("[w]ithout ... disclosure [required by 11 U.S.C. § 521], the basic system of marshalling of assets and the resulting distribution of proceeds to creditors would be an impossible task"). *Coastal Plains, Ibid.* at 208. In this case, it is clear that Debtor's failure to properly disclose his interests in the Trust and meaningfully represent the values of his assets is not due to inadvertence or mistake[14], rather he has attempted "to play fast and loose" with the disclosure requirements of the Code, this Court and, particularly, his creditors.

The facts of the case at bar are similar to those in *In re St. Angelo*, in which a Chapter 7 debtor's omission of his personal injury claim from three sets of bankruptcy schedules and his failure to amend his schedules to reflect such claim until after the Chapter 7 trustee actually came into possession of previously concealed settlement monies was found to be a willful and fraudulent attempt to conceal estate property and was an absolute bar to the debtor's exemption claim in the proceeds. In St. Angelo's case, "the debtor's 'coy' reference to his personal injury claim in the second statement of affairs as 'not being pursued' was so misleading that the reference itself amounted to actual fraud." *In re St. Angelo*, 189 B.R. 24 (Bkrtcy.D.R.I. 1995). The St. Angelo Court denied the debtor's claim of exemptions following the precedent set forth in *Payne v. Wood, Supra.* ["The operation of the bankruptcy system depends on honest reporting."] Like St. Angelo, the Debtor here initially

ly objection heightens the demand for accurate and complete lists and schedules. Ambiguities in matters of claims of exemption will be construed against the debtor because "it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules." *Mohring, Ibid.* at 395 citing to *Hyman*, 967 F.2d 1316, at 1319–20.

13. Many Courts dealing with issues of nondisclosure in the context of denial or revocation of discharge describe the relationship between the debtor and its creditors in terms of a quid pro quo. A similar theory could be applied to any benefit one receives under the Bankruptcy Code, given that there is no Constitutional right to a discharge of one's debts. "A chapter 7 case involves a quid pro quo: debtors receive a discharge and, in exchange, make full disclosure about their financial affairs, especially their assets, and surrender their nonexempt assets to the trustee for liquidation and distribution among creditors. *** Having received a discharge, they cannot now ignore their obligation to surrender their assets for the benefit of creditors." *In re Mosby*, 244 B.R. 79, 85 (Bankr.E.D.Va.2000.) "Disclosure is part of the quid pro quo exchange for a bankruptcy discharge. Intentional concealment of assets and liabilities frustrates this policy." *A.V. Reilly International v. Rosenzweig*, 239 B.R. 905, 910 (Bankr.N.D.Ill.1999). *See also, In re Hicks*, 184 B.R. 954, 957 (Bankr.C.D.Cal.1995) and *In re Katz*, 203 B.R. 227, 233 (Bankr.E.D.Pa. 1996).

14. A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Coastal Plains, Ibid.* at 210, n. 9.

concealed the Trust in his first schedules and failed to provide values respecting his interest in his residence. He "coyly" or evasively responded to the Trustee's inquiries at the § 341 meeting that the Trust assets were of "no significant value" [*Trustee's Memorandum*, p. 2]; the Trustee learned after the case was closed of the shares of stock, bank accounts, vehicles, boat, etc.

"The law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules [. . .]." *Trowbridge v. Fascio*, 718 So.2d 1025, 1028 (La.App. 4th Cir.1998) citing to *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995) and that the Court should not condone or reward a debtor's failure to comply. Like the *Payne v. Wood*, *St. Angelo* and other courts faced with the issue of a deceitful schedules, this Court must deny the Debtor's claim of exemptions. Even if this Court were to be persuaded that the Debtor's Third or Fourth Amended Schedules were accurate, no greater relief would be afforded to the Debtor. Late amendments to false schedules will not salvage an errant debtor's rights under the Bankruptcy Code.[15]

## CONCLUSION

The Court has scrutinized the Debtor's numerous schedules. From its review of all of the Debtor's schedules, the Court finds one fact indisputable: the Debtor has wholly failed to meet his obligation to file accurate and complete schedules (timely or otherwise). There is ample proof of bad faith[16] throughout this bankruptcy case.[17] As a result of the Debtor's failure to disclose information on the schedules respecting available assets, the Court, as a trier of fact, cannot determine which exemptions the Debtor would be entitled to had he undertaken his duties properly initially in his case.[18] Accordingly, the Trustee has demonstrated that the Debtor has not met his burden in fulfilling his duties as a debtor under the Code and is not entitled to claim his exemptions or any of the benefits of the Bankruptcy Code. All of the Debtor's exemptions must be disallowed based upon the Debtor's own disregard of his duties under the Code. This Court sits in equity as well as in law and a debtor, including this Debtor, is under a duty to do equity before he can claim his right to exemptions. *See Matter of Dorricott*, 5 B.R. 192 (Bankr.N.D.Ohio 1980) citing to *Stewart v. Ganey*, 116 F.2d 1010, 1011 (5th Cir.1940).

**15.** Untimely filed schedules waive a debtor's exemption unless the untimely filing is permitted by the bankruptcy judge in his discretion for cause shown or excusable neglect. "Cause shown" is a liberal standard investing the bankruptcy judge with considerable flexibility. The same might also be said for "excusable neglect" which "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) and *Bryant v. Smith*, 165 B.R. 176, 181–182 (W.D.Va.1994). Chapter 7 debtor's claim of exemption in proceeds from settlement of personal injury claim could be denied as not timely made, where personal injury cause of action to which exemption claim related was not accurately disclosed as "personal injury" rather than as "workers' compensation" claim until more than one year after first meeting of creditors, despite awareness by debtor's attorney of erroneous characterization of claim in schedules, and where attorney did not meet ten-day deadline imposed by court order on any amendment of schedules to assert exemption claim. Bankr.Code, 11 U.S.C.A. § 522(d)(11)(E). *See In re Gregoire*, *Supra*.

**16.** "[B]ad faith generally requires concealment of asset or exemption of which creditors have no knowledge, and thus no opportunity to investigate asset or its exempt status ... there must be some form of deception." *McFatter v. Cage*, 204 B.R. 503, 508 (S.D.Tex. 1996).

**17.** On May 20, 1999, after a full trial on the merits with respect to the revocation of discharge, the Court found "affirmative fraud" and "obvious, open and flagrant attempts to hide assets and keep them from the hands of the trustee for the distribution to creditors."

**18.** Value and status of exempt property in bankruptcy is determined as of the date that the petition is filed. *Armstrong v. Hursman*, 106 B.R. 625 (Bankr.D.N.D.1988).

An order in conformity with this opinion shall be issued contemporaneously herewith.