**In re A. TARRICONE, INC., Halstead-Quinn Fuel Co., Inc., Peekskill Fuel Corp., Viking Petroleum Products, Inc., Debtors.**

**Bankruptcy Nos. 86 B 20573 through 20576.**

United States Bankruptcy Court, S.D. New York.

July 13, 1987.

Proskauer Rose Goetz & Mendelsohn, New York City, for debtors; Michael E. Foreman, of counsel.

Anderson, Banks, Moore, Curran & Hollis, Mt. Kisco, N.Y., special counsel to A. Tarricone, Inc., debtor; Maurice F. Curran, of counsel.

Shea & Gould, New York City, for The Dime Sav. Bank; Scott A. Steinberg, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Bankers Trust Co.; John P. Sirico, II, of counsel.

Winick & Rich, P.C., New York City, for Creditors Committee; Jeffrey Kurtzman, of counsel.

## DECISION ON APPLICATION OF SPECIAL COUNSEL FOR INTERIM ALLOWANCE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

There are presently no unencumbered assets in these administratively consolidated Chapter 11 cases. Accordingly, the law firm of Anderson, Banks, Moore, Curran & Hollis, Esqs. ("the Anderson firm"), having been retained as special counsel for the Debtor, A. Tarricone, Inc. ("ATI"), to pursue a state court lawsuit, now seek interim compensation for their post-petition legal services as a secured creditor pursuant to a charging lien, or alternatively, as an administrative priority expense in accordance with 11 U.S.C. § 506(c). The secured creditors, Bankers Trust Company ("Bankers Trust") and The Dime Savings Bank of New York, F.S.B. ("Dime"), object to any allowance to the Anderson firm from assets of the estate which are subject to the secured creditors' liens.

### FACTS

1. On December 12, 1986, each of the above-captioned debtors filed with this court a separate petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and obtained an order for the joint administration of the cases. Pursuant to 11 U.S.C. § 1108 the debtors were authorized to continue in the operation and management of their businesses as debtors in possession.

2. Prior to the filing of its Chapter 11 petition, the debtor, ATI, retained the Anderson firm in August of 1985 as counsel in its lawsuit against James Peck and others ("the Peck lawsuit"), which was commenced in the New York State Supreme Court, Westchester County. ATI charged that Peck, ATI's former vice president, was liable for fraud and misconduct to his former employer. ATI also sought actual and punitive damages in excess of $5,000,000. Additionally, ATI sought to impose a constructive trust with respect to five parcels of real estate on which ATI leased and operated gasoline stations in New York State. It was claimed by ATI that it was induced to pay inflated rentals for these leases because of fraud perpetrated by the named defendants.

3. By order dated February 4, 1987, this court authorized the debtor, ATI, to employ the Anderson firm as special counsel to continue to represent ATI in connection with the Peck litigation in the state court. 70 B.R. 464.

4. It now appears that a settlement has been proposed in the state court lawsuit whereby ATI will receive title to one of the five parcels of real estate, namely the prop-

erty in Woodstock, New York, with respect to which ATI will assume an existing mortgage which has a balance of approximately $33,000. The property has a present value of about $175,000. Pursuant to the proposed settlement, ATI will also receive certain amounts of cash currently being held in escrow accounts established by various court orders in conjunction with the lawsuit. These amounts total approximately $19,735.

5. The Anderson firm contends that the net value of the real estate and the proceeds from the escrow accounts constitute a fund which was created as a result of their legal services and which should be the source of their compensation in accordance with their claimed charging lien, or alternatively, this fund should be subject to their administrative expense claim under 11 U.S.C. § 506(c) in view of the fact that the secured creditors will benefit because this fund will serve as additional collateral under their liens.

6. The objecting secured creditors, Bankers Trust and Dime extended credit to ATI pursuant to the terms of an Amended and Restated Revolving Credit and Term Loan Agreement (the "credit agreement") dated September 28, 1984. The debtor, ATI, received a $6,000,000 revolving line of credit and a term loan in the amount of $14,500,000. As collateral security for the loans and advances made pursuant to the credit agreement, Bankers Trust and the Dime were granted liens and security interests in substantially all of the debtor's assets, including accounts receivable, inventory and equipment. Additionally, the Dime separately loaned ATI $6,500,000, evidenced by a promissory note dated July 28, 1982. This indebtedness is secured by a mortgage on certain of ATI's real property, including three fuel tanks.

7. On December 22, 1986, this court entered an order granting ATI the authority to use cash collateral claimed by Bankers Trust and the Dime. As adequate protection for the debtor's use of cash collateral, the banks were granted a first and senior lien and security interest in accordance with 11 U.S.C. §§ 361 and 364(c)(2) in all of ATI's assets, including accounts receivable and inventory. This senior lien was expressly made "subject to any valid security interests in existence as of the commencement of these cases as may be determined by this Court." Order dated December 22, 1986.

8. The Anderson firm claims that their charging lien embraces prepetition and post-petition legal services with respect to the Peck case, totalling $103,324.02. The Anderson firm maintains that the reasonable value of their post-petition services totals $37,793.50, which they claim pursuant to their charging lien and in accordance with 11 U.S.C. § 506(c).

## DISCUSSION

When the Anderson firm continued the debtor's previously commenced lawsuit in August of 1985 against the various defendants in the Peck case in the New York Supreme Court for damages and the imposition of a contructive trust, the property in question was owned by certain defendants in that case and was not subject to the liens asserted by Bankers Trust and the Dime. As a result of the pending settlement negotiations in that litigation, it is proposed that the debtor's estate will acquire real property worth $175,000, less a $33,000 mortgage which the debtor will assume, together with cash of approximately $19,735, for a net benefit to the estate of approximately $161,735. The Anderson firm contends that this estate and the secured bank creditors benefitted from their legal services to the extent of the net assets of $162,735 which their legal services produced so that interim compensation should be awarded to the Anderson firm from these assets when they come into the estate, notwithstanding that the secured liens of Bankers Trust and the Dime will extend to these assets as well as to all other assets of the debtor, ATI.

## CHARGING LIEN

An attorney's charging lien is recognized under common law equitable principles as an attorney's right to have the fees and costs due the attorney for services in a suit secured out of the judgment or recovery in that suit. *See In re Ashley*, 41 B.R. 67 (Bankr.E.D.Mich.1984). There is a

statutory basis in New York for the imposition of an attorney's charging lien, namely § 475 of the New York Judiciary Law, which provides in relevant part as follows:

> From the commencement of an action or special proceeding ..., or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor and the proceeds thereof in whatever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment, or final order. The court upon petition of the client or attorney must determine and enforce the lien.

N.Y. Judiciary Law § 475.

In *Matter of Heinsheimer*, 214 N.Y. 361, 367, 108 N.E. 636 (1915), Judge Cardozo (later Mr. Justice) observed that the lien arose not when the funds were produced but rather when the attorney commenced the action out of which the assets arose. The fact that bankruptcy may have intervened between the time when the attorney commenced the action and when the assets were received in satisfaction of the cause of action is not significant because the charging lien relates back to the initiation of the action. *In re PDQ Copy Center, Inc.*, 27 B.R. 123, 125 (Bankr.S.D.N.Y. 1983); *In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr.S.D.N.Y.1980). The attorney need not file or record a charging lien in order to perfect it; the lien takes effect from the time the services were commenced, and a trustee in a subsequent bankruptcy case involving the client takes the property of the estate subject to such lien. *In re PDQ Copy Center, Inc.*, 27 B.R. at 125.

■ Although the Anderson firm amended its proof of claim to include a charging lien to the extent of claimed legal services in the amount of $103,324.02, the firm's motion is limited to compensation for legal services performed subsequent to the commencement of the Chapter 11 cases. The amount sought as an interim allowance is $37,793.50. Although there are presently no unencumbered funds in this estate to pay this request, the court will allow this sum as an interim allowance, to be paid from the assets described in the proposed settlement of the Peck lawsuit. The court need not address the issue as to whether or not the secured bank creditors expressly or impliedly consented to having their collateral subjected to an award for interim allowances, or whether or not the secured bank creditors directly benefitted from the Anderson firm's services, as required under 11 U.S.C. § 506(c). *See General Electric Credit Corporation v. Peltz (In re Flagstaff Food Service Corporation)*, 762 F.2d 10 (2d Cir.1985) ("Flagstaff II"); *General Electric Credit Corporation v. Levin & Weintraub (In re Flagstaff Food Service Corporation)*, 739 F.2d 73 (2d Cir. 1984) ("Flagstaff I"); *In re Codesco*, 18 B.R. 225 (Bankr.S.D.N.Y.1982). Having produced a fund of assets for this estate as a result of their state court litigation, the Anderson firm is entitled to rely upon the attorney's statutory charging lien with respect to their post-petition legal services which are embraced under such lien. *Gordon v. Shirley Duke Associates, A.P.I., (In re Shirley Duke Associates)*, 611 F.2d 15 (2d Cir.1979). Without determining the final extent of the Anderson firm's compensation with respect to the New York State Supreme Court lawsuit in which the Anderson firm was continued as special counsel pursuant to order of this court, it is sufficient to say that the Anderson firm is entitled to an interim allowance for the legal services which they performed in the post-petition period. The requested fee of $37,793.50 is a fair and reasonable interim allowance for such services, which sum the Anderson firm may withhold from the settlement fund as and when such assets are received by them.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. The application by the Anderson firm for an interim allowance from assets embraced by their statutory attorney's charging lien pursuant to § 475 of the New York

Judiciary Law is allowed to the extent of $37,793.50 for the legal services performed for this estate in the state court lawsuit during the post-petition period.

3. The interim allowance of $37,793.50 to be paid to the Anderson firm may be withheld from the proceeds received from the settlement of the state court litigation. To the extent there are insufficient funds to satisfy the award of $37,793.50, the balance of the charging lien shall attach to the real estate or other property received by the debtor's estate in the settlement of the state court lawsuit. Such charging lien shall be senior to the lien acquired by the secured bank creditors arising out of the cash collateral order, which was made "subject to any valid security interest in existence as of the commencement of these cases ...".

SETTLE ORDER on notice.