**In re Leopold L. CORBI, Debtor.**

**Bankruptcy No. 189–90640–260.**

United States Bankruptcy Court, E.D. New York.

Jan. 7, 1993.

---

Fischoff Gelberg & Director by Stuart P. Gelberg, Garden City, NY, for Chapter 7 Trustee.

Julie A. Pichardo, Awad and Miklos, P.C., Lake Success, NY, for debtor and Silberstein.

Office of U.S. Trustee by Alfred M. Dimino, Garden City, NY.

## DECISION ON MOTION OF THE TRUSTEE FOR AN ORDER STRIKING THE DEBTOR'S CLAIM OF EXEMPTIONS

CONRAD B. DUBERSTEIN, Chief Judge.

This matter is before the Court on the motion of the Trustee, Stuart P. Gelberg, Esq. ("the Trustee") who seeks an order pursuant to 11 U.S.C. § 522 striking the claim of exemptions by the Debtor, Leopold L. Corbi ("the Debtor") and to recover costs. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) inasmuch as it concerns the administration of the estate and 28 U.S.C. § 157(b)(2)(B) as it pertains to the allowance of exemptions from property of the estate. For the reasons hereinafter set forth, the motion to strike the exemptions is hereby granted in part and denied in part.

### FACTS

On or about December 20, 1984, the Debtor badly fractured his left ankle, breaking three separate bones in his ankle joint. According to the Debtor, he tripped over a cord which was being used to sell Christmas trees in front of a fruit and vegetable stand owned by CID–SAM Management Corp. and operated by Frank Bruno.

In September 1985, the Debtor and his spouse, Karen Corbi, commenced personal injury actions against CID–SAM Management Corp. and Frank Bruno which were then consolidated into one action. *Leopold Corbi and Karen Corbi v. CID–SAM Management and Frank Bruno*, Index No. 16832/86 (June 13, 1988). In their complaint, the Debtor sought $1,000,000 in damages while his wife sought $100,000 for loss of consortium. Reichenbaum and Silberstein, P.C., now known as Silberstein, Awad and Miklos, P.C. (the "Reichenbaum firm" or the "Firm"), represented the Debtor and his wife.

On March 1, 1989, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Reichenbaum firm represented the Debtor on a pro bono basis. Thereafter, on April 14, 1989, the case was converted to one under Chapter 7. The Debtor also filed Chapter 7 schedules and statements on that date. The Reichenbaum firm continued to represent the Debtor.

Schedule B–2 of the Debtor's Chapter 7 petition, which sets forth the personal property of the Debtor, classified the personal injury action as a contingent and unliquidated claim. The value of the claim was listed as unknown since the case was in the discovery stage. However, the Debtor did not list the personal injury action as exempt property in his Schedule B–4.

On May 15, 1989, Stuart P. Gelberg, Esq. was appointed as interim trustee in the Debtor's Chapter 7 case. On May 22, 1989, he sent a letter to the Reichenbaum firm in which he stated his intention to retain the Firm as special counsel in connection with the personal injury action. Additionally, the letter stated that the Trustee would prepare an order and application for the Firm's retention. According to the Trustee, the Firm failed to respond to any of his telephone calls or letters from and including the letter of May 22, 1989, through and including a letter sent by certified mail on April 23, 1991. In support of this allegation, the Trustee has submitted a letter dated July 2, 1991, from Mr. Joseph Awad, a partner at the Reichenbaum firm, in which Mr. Awad apologizes to the Trustee

for the lack of professional courtesy given to him by associates.

Frustrated by the lack of communication, the Trustee felt it necessary to make a motion pursuant to Fed.R.Bankr.P. 2004 [1] to examine Jerome Silberstein, one of the partners of the Reichenbaum firm, and on July 10, 1991, this Court issued an order for such examination.

Although the Firm did forward a copy of the Summons and Verified Complaint to the Trustee on or about July 22, 1991, the Trustee alleges that the Firm continued to ignore his letters and telephone requests for information subsequent to the Order of July 10, 1991.

During this period, CID–SAM Management was granted summary judgment against the Corbis. A settlement was reached with the other defendant, Frank Bruno, in the amount of $50,000 which Debtor's counsel represented as being the maximum limit of Bruno's insurance.

On January 17, 1992, the Corbis and Mr. Bruno formally settled the personal injury action before the Honorable Bertram Katz, a Justice of the Supreme Court of the State of New York. *Leopold Corbi and Karen Corbi against Frank Bruno*, Index No. 16832–88, Tr. (Jan. 17, 1992). According to the transcript taken before Judge Katz that day, $7,000 was to be allocated to bodily injury and another $43,000 to future loss of income. As to loss of consortium, the following exchange took place:

[Judge Katz]: Is there a loss of service claim by the wife?

[Bruno's counsel]: No.

[Judge Katz]: Everything all right? You look like you're in a state of shock.

[the Reichenbaum firm]: There was a loss of service claim by the wife.

[Judge Katz]: Oh, there is a loss of services claim by the wife.

[the Reichenbaum firm]: Which kind of shocked me.

[Judge Katz]: Yes, well let me know. Your wife's name is what, sir?

[The Debtor]: Karen.

[Judge Katz]: And you have advised her of this settlement?

[The Debtor]: Yes.

[Judge Katz]: And she has joined in this settlement with you; is that correct?

[The Debtor]: Yes, sir.

[Judge Katz]: All right. Thank you.

Tr. Jan. 17, 1992 at 5–6 (No. 16832–88).

According to the Reichenbaum firm, the settlement monies were not received until March of 1992, at which time they were immediately placed in escrow. The Firm then hired Julie Pichardo, Esq., to represent the Firm and the Debtor in all bankruptcy matters relating to the Debtor and the Firm's distribution of the settlement proceeds.

On May 13, 1992, nearly four months after the settlement was reached, the Debtor, on notice to the Trustee and creditors, made application to this Court seeking an order to amend his schedules.[2] On May 15, 1992, this Court entered an order amending the Debtor's schedules as follows:

(1) $7,500 as personal bodily injury pursuant to N.Y.Debt. & Cred.Law § 282(3)(iii) (McKinney 1992);

(2) $5,000 as alternative bankruptcy exemption pursuant to N.Y.Debt. & Cred. Law § 283(2) (McKinney 1992);

(3) $14,091.42 as loss of future earnings pursuant to N.Y.Debt. & Cred.Law § 282(3)(iv) (McKinney 1992);

(4) $5,000 as loss of consortium for Karen Corbi; and

---

**1.** Fed.R.Bankr.P. 2004 allows a party in interest, upon court approval, to examine any entity on any matter which may affect the administration of the debtor's estate.

**2.** Fed.R.Bankr.P. 1009 states:
(a) General Right to Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed.

Moreover, the Advisory Committee note to the rule states:
This Rule contains the permissive approach adopted by former Bankruptcy Rule 110 to amendments of voluntary petitions and papers.
Fed.R.Bankr.P. 1009 Advisory Committee's note.

(5) $18,408.58 to be paid to the Firm for fees and disbursements relating to the personal injury action.

On May 21, 1992, the Trustee moved to strike the Debtor's amendment of exemptions on the basis of bad faith and prejudice to creditors and the Trustee. Following a hearing before this Court on June 10, 1992, this Court on June 22, 1992, ordered the Firm to maintain all proceeds and interest received from the settlement in a separate interest bearing account and to promptly arrange to have an application submitted in support of its retention pursuant to § 327 and Fed.R.Bankr.P. 1009.

## DISCUSSION

### I. Property of the Estate and Exemptions

■ Section 541 of the Bankruptcy Code defines property of the estate to include all legal or equitable interests of a debtor in property as of the commencement of a bankruptcy case. The personal injury action and the proceeds thereof are clearly property of the estate. *Tignor v. Parkinson*, 729 F.2d 977, 980–81 (4th Cir.1984); *In re Young*, 93 B.R. 590, 593 (Bankr. S.D.Ohio 1988); *In re De Berry*, 59 B.R. 891, 895 (Bankr.E.D.N.Y.1986).

■ Once property becomes part of the bankruptcy estate, it may be exempted under federal or state law. 11 U.S.C. 522(b)(1). Pursuant to § 522(b)(1), New York has "opted out" of the federal exemptions under § 522(d) and enacted its own exemption statutes. N.Y.Debt. & Cred. Law §§ 282–284 (McKinney 1992). Accordingly, the applicable provisions of New York law provide the basis for determining the propriety of the Debtor's exemptions. N.Y.Debt. & Cred.Law § 284 (McKinney 1992); *In re Kleist*, 114 B.R. 366, 367 (Bankr.N.D.N.Y.1990) (debtors domiciled in New York are restricted to exemptions provided by state law); *In re Olmstead*, 82 B.R. 197, 198 (Bankr.W.D.N.Y.1988) (New York debtors required to use state law exemptions).

■ In examining exemption statutes, the general rule is that they are to be liberally construed in favor of the debtor.

*In re Mann*, 134 B.R. 710, 715 (Bankr. E.D.N.Y.1991); *In re Cramer*, 130 B.R. 193, 194 (Bankr.E.D.Pa.1991); *Kleist*, 114 B.R. at 367. Absent a showing of bad faith or prejudice to a party in interest, an allowable exemption should be permitted. *In re Magallanes*, 96 B.R. 253, 255–56 (9th Cir. BAP 1988); *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986); *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982); *In re Drake*, 39 B.R. 75, 76 (Bankr.E.D.N.Y.1984).

■ Additionally, under Fed.R.Bankr.P. 4003(c), the party objecting to the exemptions, herein the Trustee, has the burden of proving that they are not properly claimed. *Cramer*, 130 B.R. at 194.

### II. Bad Faith

■ The Trustee argues that the Debtor's exemptions should be stricken in their entirety due to bad faith by the Debtor. The Trustee asserts that bad faith is demonstrated by the following acts: 1) the exemptions are untimely since the Debtor waited three years to amend his schedules; 2) the exemptions were sought only after the funds were discovered by extensive effort by the Trustee; and 3) absent this effort, the Debtor most likely would have used the proceeds without any notification to either the Trustee or this Court.

Although the Trustee argues that bad faith is demonstrated by waiting three years to amend the schedules, Fed. R.Bankr.P. 1009, as set forth above, allows for amendments at any time before the case is closed. Most courts considering the issue of amending schedules have allowed debtors great latitude in doing so prior to the closing of the case. *Magallanes*, 96 B.R. at 255–56; *Drake*, 39 B.R. at 76.

In *In re Sacco*, 99 B.R. 647, 650 (Bankr. W.D.Pa.1989), a debtor was permitted to exempt portions of a personal injury settlement over the Trustee's objections despite having waited more than a year after the settlement and having ignored the Trustee's earlier instructions to exempt the funds.

Similarly, in a case arising under former Bankruptcy Rule 110, the Fourth Circuit

affirmed the decision of a bankruptcy court which had allowed a debtor to amend his exemptions to include a portion of a personal injury settlement even though more than four months passed between the settlement date and the motion to amend. *Tignor v. Parkinson*, 729 F.2d at 978.

In order to establish bad faith, one must do so by clear and convincing evidence. *Magallanes*, 96 B.R. at 255; *In re Kobaly*, 142 B.R. 743, 748–49 (Bankr. W.D.Pa.1992); *In re Myatt*, 101 B.R. 197, 199 (Bankr.E.D.Cal.1989). This standard insures that creditors' rights are protected and that the guarantee of "permissive amendment" pursuant to Fed.R.Bankr.P. 1009 is satisfied. *Magallanes*, 96 B.R. at 256; *In re Brown*, 56 B.R. 954, 958 n. 10 (Bankr.E.D.Mich.1986). It is clear that the Trustee has failed to meet this burden. While it is true that the Debtor waited almost four months to amend his schedules, this does not demonstrate bad faith under the Bankruptcy Rules and applicable case law. Further, the Trustee's claim that absent his efforts, the Debtor would have concealed the settlement is unconvincing. The personal injury action was listed in the Debtor's original Chapter 7 schedules. Additionally, the Trustee learned of the settlement not through his own efforts but rather because Debtor's counsel served him with notice of the proposed Order to Amend Schedules. Finally, the Trustee's simple assertion that the Debtor would have concealed the assets is nothing more than conjecture. In short, the Trustee has failed to convince this Court of any bad faith on the part of the Debtor or his counsel.

## III. Prejudice to Creditors

Additionally, the Trustee argues that the exemptions should be stricken as creditors have been prejudiced in that they may have based their actions on the knowledge that the Debtor was not claiming exemptions in the settlement proceeds. While creditors may have acted as the Trustee claims, the mere allegation of prejudice is insufficient to meet the Trustee's burden under Fed.R.Bankr.P. 4003. That

the Debtor could have exempted the funds earlier in the case is of little consequence. Whether the Debtor did so then or does so now, the same result occurs, the funds are properly exempted.

## IV. Objections to Specific Exemptions

Aside from his general objections to the exemptions, the Trustee also objects to certain specific exemptions of the Debtor. The Court will address each in turn.

### A. *The $5,000 Loss of Consortium Claim by Karen Corbi*

As previously noted, the personal injury complaint sought $100,000 for Karen Corbi for loss of consortium. The Trustee claims that the previously quoted portion of the settlement transcript demonstrates that nothing was allocated to Mrs. Corbi's loss of consortium claim. The Debtor's counsel refers to the same passage in the transcript and asserts that it establishes that Mrs. Corbi's claim was incorporated into the settlement and therefore any monies allocated to her do not belong to the Debtor's estate. Counsel further states that a loss of consortium claim is customarily not delineated at the time of settlement. However, she cites no case law to support this contention.

After thoroughly reviewing the transcript of the settlement before Judge Katz, this Court agrees with the Trustee that the transcript shows only that the wife had a claim for loss of consortium. Nowhere is it demonstrated that the settlement contained monies to be apportioned to the consortium claim. In fact, since the Debtor and his attorney participated in structuring the settlement, they had ample opportunity to allocate monies to the loss of consortium claim. Further, had monies been allocated to the consortium claim, surely the Debtor or his attorney would have mentioned it at the settlement hearing. Even more telling is the fact that Karen Corbi knew of, and joined in, the settlement.

### B. *$7,500 Bodily Injury Claim*

Pursuant to § 282(3)(iii) of N.Y.Debt. & Cred.Law (McKinney 1992), a

debtor may exempt a payment of no more than $7,500 on account of personal bodily injury. The Trustee contends that since the settlement allocated only $7,000 to personal bodily injury, the Debtor should not be allowed to exempt an extra $500. Debtor's counsel argues it is within the ambit of this Court's power to allow the extra $500 exemption. In support of this proposition, Debtor's counsel relies on *In re Shaffer*, 78 B.R. 783 (Bankr.D.S.C.1987) and *In re Courtney*, 89 B.R. 15 (Bankr.W.D.Tex. 1988).

After reviewing both cases, this Court finds them to be wholly unpersuasive inasmuch as both deal with the definition of household goods under applicable state law. This settlement was structured by the Debtor and his attorneys. Furthermore, the settlement was never submitted to this Court for approval.[3] That the Debtor now wants this Court to restructure the settlement is like trying to have your cake and eat it too. Since the Debtor and his counsel created and entered into the settlement without approval of this Court or the Trustee, the Court will not examine further into the equities of the settlement. In light of the facts of this case, to do as the Debtor asks, would be to allow the manipulation of the Bankruptcy Code and Rules.

## C. *The $5,000 Alternative Bankruptcy Exemption*

The Trustee properly points out that N.Y.Debt. & Cred.Law § 283(2) (McKinney 1992) allows a debtor to exempt up to $2,500 in cash. Therefore, the Trustee claims that the Debtor's exemption under this section is improper since the exemption applies only to cash and the Debtor's interest, as of the filing of the bankruptcy petition, was in a personal injury action. The Debtor is in agreement with the Trustee and has withdrawn any claim of exemption under this provision.

## D. *The $14,091 Loss of Future Earnings Exemption*

 The Debtor has claimed $14,091 as exempt under N.Y.Debt. & Cred.Law

§ 282(3)(iv) (McKinney 1992) which exempts payments in compensation of future earnings of the debtor to the extent reasonably necessary for the support of the debtor and his dependents. Realizing that the exemption under N.Y.Debt. & Cred.Law § 283(2) was invalid, the Debtor would like to shift the $5,000 and exempt it under this section.

Given the nature and extent of the injury, it is possible that the Debtor may suffer some loss of future income. However, the Court can not allow the Debtor to simply conjure up a figure and then exempt that amount as loss of future income. The state court settlement allocated $43,000 as loss of future income to the Debtor. However, in the application to exempt the proceeds, the Debtor asked only for $14,091.42 as loss of future income.

As revealed by the transcript, Judge Katz did not inquire into the amount reasonably necessary to support the Debtor and his dependents. Such an inquiry is the responsibility of this Court. Therefore, this Court must hold a hearing to determine the actual amount reasonably needed by the Debtor to support himself and his dependents.

## V. Attorney Fees

The Trustee argues that the Reichenbaum firm is not entitled to any compensation as it failed to submit an application for retention pursuant to 11 U.S.C. § 327 and Fed.R.Bankr.P. 2014 and was completely uncooperative with him. Counsel for the Reichenbaum firm vigorously disputes any allegation of being uncooperative and instead claims that it is the Trustee's duty to prepare and submit the Retention Application and Order pursuant to Fed.R.Bankr.P. 2014, which states in relevant part:

(a) Application for and Order of Employment. An order approving the employment of attorneys, ... or other professionals pursuant to § 327 ... shall be

---

**3.** Fed.R.Bankr.P. 9019(a) provides in relevant part:

On motion by the trustee and after a hearing on notice to ... the court may approve a compromise or settlement.

made only on application of the trustee or committee.

The Court begins its analysis by noting that the law is well-settled that an attorney for a Chapter 7 debtor need not obtain court approval. 2 COLLIER ON BANKRUPTCY, ¶ 327.07 at 327–83 (15th ed. 1992); *In re Doors and More, Inc.,* 126 B.R. 43, 45 (Bankr.E.D.Mich.1991); *In re Trinsey,* 115 B.R. 828, 832 (Bankr.E.D.Pa. 1990); *In re Andy Gibb Org., Inc.,* 81 B.R. 699 (Bankr.S.D.Fl.1987); *In re Spencer,* 48 B.R. 168, 171 (Bankr.E.D.N.C.1985). However, the personal injury action and any proceeds thereof became property of the estate upon the filing of the petition pursuant to 11 U.S.C. § 541. Therefore, since the Trustee wished to retain the Reichenbaum firm, the Trustee was required pursuant to Fed.R.Bankr.P. 2014 and 11 U.S.C. 327(e)[4] to seek the Firm's appointment as special counsel to the Trustee upon conversion of the case to Chapter 7 in order for the Firm to receive any fee out of assets of the Debtor's estate for services rendered subsequent to the date of conversion.[5] *In re French,* 111 B.R. 391, 393 (Bankr. N.D.N.Y.1989). Moreover, the Trustee apparently knew of his responsibility to make such application as he stated his intention to do so in his letter to the Reichenbaum firm dated May 22, 1989.

Pursuant to § 475 of the N.Y.Jud.Law (McKinney 1992), an attorney possesses a statutory charging lien for fees which attaches to his client's cause of action and any proceeds therefrom. Prior to the passage of the Bankruptcy Code, the Second Circuit held that a trustee takes proceeds subject to an attorney's charging lien where the attorney had a prepetition contingent fee retainer agreement and the trustee did not intervene as a party plaintiff in the prepetition litigation and permit-

ted Debtor's counsel to pursue the litigation postpetition. *In re Prudence Co.,* 96 F.2d 157, 159 (2d Cir.1938), *cert. denied, McGrath v. Davison,* 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393 (1938). This holding has been followed by at least one bankruptcy court in this district. *De Berry,* 59 B.R. at 897 (Chapter 7 turnover proceeding wherein the court stated that a prepetition contingent fee retainer agreement is enforceable postpetition where trustee allows debtor's counsel to pursue litigation postpetition and does not intervene as party plaintiff). Taken together, these two cases seem to suggest that retention may not be a condition precedent to receiving fees from property of a debtor's estate. However, *Prudence* was decided prior to the enactment of the current Bankruptcy Code which requires retention pursuant to § 327(e) and Fed.R.Bankr.P. 1009.[6] 96 F.2d 157. Similarly, *De Berry* was a turnover proceeding brought more than four years after the attorney received his fees and therefore the court did not directly address the necessity of retention orders. 59 B.R. 891.

In *In re French,* 111 B.R. at 393, the court considered the effect of an attorney's statutory lien upon his rights to fees where he represented the Chapter 7 debtor in a matrimonial action without being retained by the court. The court held that the existence of a charging lien under § 475 of the New York Judiciary Law did not exempt the attorney from the requirement of appointment pursuant to court order if the attorney was to be compensated for his representation of the debtor in the matrimonial action post conversion to Chapter 7. *Id.* See, *In re A. Tarricone, Inc.,* 76 B.R. 53 (Bankr.S.D.N.Y.1987) (allowing interim fees pursuant to N.Y.Jud.Law § 475 to a law firm which was representing the debtor-in-possession in a state court fraud and

**4.** Section 327(e) allows a trustee, with court approval, to employ an attorney that has previously represented the debtor when it is for a special purpose other than representing the trustee in conducting the case and if the attorney does not hold an interest adverse to the debtor or to the estate.

**5.** The Trustee's failure to properly retain the Firm does not affect the Firm's right to compen-

sation for services rendered prior to the date of conversion.

**6.** Additionally, Local Rule 18(a)(1) of the Local Rules of the United States Bankruptcy Court for the Eastern District of New York states in pertinent part that "[n]o attorney ... shall be retained ... unless his retention has been authorized by an order of the Court."

misconduct action; however, the firm had been appointed postpetition); *In re Statewide Pools, Inc.*, 79 B.R. 312 (Bankr. S.D.Ohio 1987) (Chapter 7 case in which post-petition appointment was granted despite attorney having a charging lien).

■ As a general rule, the Second Circuit prohibits *nunc pro tunc* retention orders. *In re Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981), *cert. denied, Israel & Riley v. Futuronics Corp.*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Sapphire Steamship Lines, Inc.*, 509 F.2d 1242, 1245–46 (2d Cir.1975). Although this Court notes that the decision in *French*, 111 B.R. at 394, denied fees based on what it characterized as the Second Circuit's "per se" rule forbidding *nunc pro tunc* orders, it does not appear that the prohibition against such orders is to be so narrowly interpreted. As recently stated by Judge Kaplan:

> In no instance that can be found has the [Second] Circuit adopted a rigid view of the prior approval requirement in connection with any professional whose only involvement in the case, as attorney or otherwise, was to perform services for the estate which the professional thought would be compensable from the estate and as to which the professional could look to no-one but the estate (for compensation).

*In re Piecuil*, 145 B.R. 777, 781 (Bankr. W.D.N.Y.1992). Since the Firm was operating under a contingent fee agreement, it would receive fees only if a settlement or successful judgment was obtained. In either event, the proceeds would be property of the estate.

■ In its capacity as a court of equity, *U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Russo*, 762 F.2d 239, 242 (2d Cir. 1985); *In re Beck Indus.*, 605 F.2d 624, 634 (2d Cir.1979), a bankruptcy court is to be guided by equitable doctrines and principles. *In re J.M. Check Cashing Corp.*, 49 B.R. 273, 277 (Bankr.E.D.N.Y.1985). The Court agrees with the decision in *Piecuil*,

145 B.R. at 783, that as a court of equity, this Court has latitude to grant relief where the failure to timely file an application for retention has been reasonably explained. It would be manifestly unjust to bar the Firm from receiving its fees as a result of the Trustee's failure to properly apply for retention. In such situations, *nunc pro tunc* retention is especially proper to prevent an attorney from forfeiting his fees as a result of the trustee's failure to obtain court approval.

Although the Reichenbaum firm may be entitled to compensation, the Court finds its conduct to be subject to criticism. While the Firm asserts that the Trustee was welcome to speak with the Firm whenever he desired, it is clear to this Court that the Reichenbaum firm communicated with the Trustee only after the Trustee obtained an order to examine one of the Firm's partners.

In attempting to defend its behavior, the Firm claims that it was simply following N.Y.Code of Professional Responsibility DR 5–107 (1992) which mandates that a lawyer shall not permit another person, other than the client, to direct his professional judgment in rendering legal services. It is abundantly clear that the Trustee wished only to obtain information regarding the personal injury action. Further, both the Corbis and the Trustee had a shared interest in seeing that the estate realize the maximum possible in the personal injury action. Again, the Reichenbaum firm's reasoning seems unpersuasive to this Court.

## IV. Prejudice to the Trustee

■ Prejudice must be evaluated in light of the specific circumstances of each case. *Drake*, 39 B.R. at 77. It is clear to this Court that the Trustee was prejudiced as a direct result of the Reichenbaum firm's failure to cooperate or provide him with information. The Trustee spent months under the assumption that the settlement monies were not going to be exempted and expended tremendous effort in attempting to gain information regarding the personal injury action. In order to

properly oversee the estate, the Trustee was forced to take the extraordinary step of seeking an examination of one of the Firm's partners. Furthermore, it may be that without the Trustee's actions, this Court may never have learned about the settlement which is the subject of this proceeding.

As previously noted, this Court is mindful of the fact that it sits as a court of equity. Accordingly, the Court draws an analogy to those cases wherein a trustee has diligently sought out assets not claimed as exempt only to have the debtor attempt to exempt them. While cognizant of the prejudice to the trustee, courts also recognize the inherent unfairness in denying the exemption. The solution to this quandary has been to allow the amendment conditioned upon payment to the trustee of reasonable expenses. *In re Blaise,* 116 B.R. 398, 402 (Bankr.D.Vt.1990); *Myatt,* 101 B.R. at 201; *In re Stewart,* 11 B.R. 447, 448 (Bankr.N.D.Ga.1981); *In re Boyer,* 7 B.R. 930, 932 (Bankr.D.Idaho 1981).

In conjunction with 11 U.S.C. § 328 which grants the court the power to scrutinize a retainer agreement to prevent overreaching or unfairness, *De Berry,* 59 B.R. at 897, this Court will use its equitable powers to condition Reichenbaum's right to its fees upon payment to the Trustee of the additional costs and expenses incurred by the Trustee in overseeing the personal injury action which are related to Reichenbaum's lack of cooperation.

## CONCLUSION

The $5,000 contingent alternative exemption and the $5,000 claimed as loss of consortium are hereby stricken and are to be surrendered to the Debtor's estate. To the extent that the Debtor seeks to claim more than $7,000 under the pain and suffering exemption, that too is stricken and the exemption is allowed to the extent of $7,000 as agreed to by the Debtor in the state court settlement. The Trustee is directed to submit an application for retention of the Reichenbaum firm *nunc pro tunc* as of the date of the conversion of this case to a Chapter 7 case. The Trustee shall also file

a statement of his claimed costs and expenses incurred as a result of the Reichenbaum firm's lack of cooperation, a copy of which the Trustee shall simultaneously serve on the Reichenbaum firm. Lastly, the parties are directed to schedule with my courtroom deputy an evidentiary hearing on the loss of future income which may be exempted pursuant to N.Y.Debt. & Cred.Law § 282(3)(iv) and to consider the Trustee's claim for costs and expenses as set forth above, as well as the amount of fees which should be awarded to the Reichenbaum firm.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.