In re Augustus ST. ANGELO, Debtor.

Bankruptcy No. 92–12735.

United States Bankruptcy Court,
D. Rhode Island.

Dec. 4, 1995.

Louis A. Geremia, Chapter 7 Trustee, Geremia, DeMarco & Christelis, Providence, RI.

Russell D. Raskin, Raskin & Berman, Providence, RI, for Debtor.

### DECISION AND ORDER DENYING DEBTOR'S CLAIM OF EXEMPT PROPERTY

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Chapter 7 Trustee's Objection, based on alleged concealment of assets, to the Debtor's claim of exempt property. The travel of this matter and the issues presented herein are as follows: By an Order dated November 28, 1994, the Debtor amended his schedule of assets to include $73,522 from a personal injury settlement, and moved to amend Schedule C, claiming a portion of the settlement as exempt. The Trustee contends that in his initial disclosures the Debtor failed to list this asset, that thereafter he deliberately and repeatedly attempted to conceal the same from creditors, and that these serial misdeeds preclude him from now claiming or enjoying any portion of the settlement as exempt property.

We are asked to determine: (1) whether there is sufficient evidence to support a finding that the Debtor acted in bad faith in failing to disclose his personal injury claim as an asset; (2) if there is clear and convincing evidence of bad faith, does this warrant denial of the exemption claimed by the Debtor under 11 U.S.C. § 522; (3) if the claimed exemption is allowed, does the amount claimed as exempt exceed the limits in 11 U.S.C. § 522(d)(11)(D); and (4) is the amount sought reasonably necessary for the Debtor's support? Because we answer the first two questions in the affirmative, there is no need to address issues (3) and (4).

### BACKGROUND

On April 3, 1988, Augustus St. Angelo was involved in an automobile accident and sustained personal injuries. Approximately one year later he commenced a lawsuit against Aetna Life & Casualty Company, claiming money damages for his injuries, and on September 22, 1992, he filed a petition under Chapter 13 of the Bankruptcy Code. One month later St. Angelo filed schedules with no mention of the personal injury claim as an asset, and nowhere in his statement of financial affairs did he indicate or disclose that he was the plaintiff in a pending personal injury action.

On November 16, 1992, because his secured debts ($562,000) exceeded the statutory Chapter 13 limits ($350,000), St. Angelo converted the case to Chapter 11, and on January 8, 1993, he filed Chapter 11 schedules and again failed to list the personal injury claim as an asset. This time, however, St. Angelo did reference the claim in the Statement of Financial Affairs, as follows: "Lawsuit is pending. no [sic] CA NO.[1] AETNA Casualty Declaratory Judgement."

On May 12, 1993, on the United States Trustee's motion, the case was converted to Chapter 7, and a trustee was appointed. On July 28, 1993, Russell D. Raskin, Esq., entered his appearance, replacing Thomas W. Pearlman, Esq., as St. Angelo's bankruptcy attorney. For the third time, schedules were filed, and again St. Angelo failed to list his

1. On the facts before us, we see the failure to include the case number as further evidence of the Debtor's intent to obfuscate the existence of the claim.

personal injury claim as an asset. As with the Chapter 11 schedules, the cause of action was vaguely referenced in the Statement of Financial Affairs as follows: "Lawsuit pending Aetna Casualty declaratory judgment; Debtor has not pursued." (*See* Statement of Financial Affairs, at 2).

In July 1993, in plain contradiction of the sworn statement, "Debtor has not pursued," his personal injury action was settled in the amount of $75,000. The Trustee first learned of this asset on November 2, 1994, when he was served with a Motion to Amend Schedule B listing the $73,522.75 settlement as an asset of the estate, and Schedule C claiming $41,515.17 of those proceeds as exempt. Two days later, the Trustee received by mail a check in the amount of $73,522.75 from the Debtor's personal injury attorney.[2] Until that time, the Chapter 7 Trustee had no idea that a claim even existed, let alone that it had been negotiated, liquidated, and settled.

After the hearing on July 12, 1995, on the Trustee's objection to the Debtor's claim of exempt property, the Court requested memoranda addressing the issues of good (or bad) faith, concealment of assets, and burden of proof. Upon consideration, and for the reasons discussed herein, we find by clear and convincing evidence that the Debtor, in bad faith, attempted to conceal this asset from creditors, and conclude that said conduct is a bar to his right to claim *any part* of the concealed asset as exempt property.

### DISCUSSION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

 Under Federal Rule of Bankruptcy Procedure 1009, a debtor may amend a voluntary petition as a matter of course anytime before the case is closed. *In re Yonikus,* 996 F.2d 866, 871–72 (7th Cir.1993); *Lucius v. McLemore,* 741 F.2d 125, 126 (6th Cir.1984). This language comports with the well-established principle that exemptions should be liberally construed in furtherance of the debtor's right to a "fresh start," *see In re*

*Magallanes,* 96 B.R. 253, 256 (9th Cir. BAP 1988); *In re Corbi,* 149 B.R. 325, 329 (Bankr. E.D.N.Y.1993), and absent bad faith or prejudice to creditors, courts have little or no discretion to deny leave to amend a claim of exemption. *In re Gaudet,* 109 B.R. 548 (Bankr.D.R.I.1989).

 The court may disallow such amendments, however, in exceptional circumstances.

> Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. *See Matter of Doan,* 672 F.2d 831, 833 (11th Cir.1982). A mere allegation by an objector of bad faith is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence. *See Matter of Brown,* 56 B.R. 954, 958 (Bankr.E.D.Mich.1986).

*In re Kobaly,* 142 B.R. 743, 748–49 (Bankr. W.D.Pa.1992); *see also, Yonikus,* 996 F.2d at 872. Intentional concealment of estate property will bar the debtor from claiming such property as exempt, after it surfaces as an asset. *See, e.g., Doan,* 672 F.2d at 833; *Calder v. Job (In re Calder),* 973 F.2d 862, 868 (10th Cir.1992). Intent to conceal is a factual determination to be made by a bankruptcy court, based upon the evidence presented and inferences drawn therefrom at trial. *In re Yonikus,* 996 F.2d at 872.

 St. Angelo contends that it was confusion, not artifice, that caused the "omission" of his personal injury claim from three sets of bankruptcy schedules, which he describes as a "bewildering maze of conflicting numbers and information." He attributes his current predicament to a lack of familiarity with the law, and reliance on his attorney. He also points out that the claim against Aetna was in fact referenced in the Statement of Affairs, and that therefore the Trustee was fairly on notice as to its existence.

St. Angelo relies on *In re Corbi,* 149 B.R. 325, where the court found that the Trustee failed to demonstrate bad faith by clear and convincing evidence of concealment. *Id.* at

---

**2.** Thomas F. Pearlman, Esq., the Debtor's personal injury lawyer and prior bankruptcy counsel, had been under investigation by the United States Trustee, and was being required to produce accountings in several bankruptcy cases. He mailed this check to the Chapter 7 Trustee shortly after being ordered to file such an accounting regarding St. Angelo.

330. The instant case is easily and clearly distinguished. The debtor in *Corbi* did list the personal injury claim in Schedule B of his Chapter 7 schedules, and the Trustee had notice of the claim through the debtor's proposed order to amend schedules. In relying solely on the debtor's four month delay in seeking to amend his schedules, the trustee in *Corbi* was unable to establish the requisite degree of bad faith. We do not disagree with that result. *Corbi,* however, bears no factual resemblance to the case at bar, where St. Angelo did not move to amend his schedules until the trustee actually came into possession of the previously concealed asset, and while the claim in this case was coyly referenced by St. Angelo in his second Statement of Affairs, the description was so misleading that the reference itself amounts to actual fraud.[3]

*In re Yonikus* is more on point, where the Seventh Circuit upheld the Bankruptcy Court's denial of the claim of exemption of a personal injury cause of action after the debtor had attempted unsuccessfully to conceal the claim. 996 F.2d 866. In that case the debtor sustained injuries in a work-related accident, subsequently commenced a third-party action, *id.* at 868, and one month later filed for bankruptcy relief. The debtor hired different lawyers to represent him in each legal matter, and did not schedule the personal injury claim either as an asset of the estate or as exempt property. *Id.* After the debtor was granted a discharge, he received the settlement proceeds from the prepetition claim, as well as worker's compensation benefits, neither of which were disclosed to the Trustee. Upon becoming aware of these assets, the Trustee filed an adversary proceeding. The Bankruptcy Court found that the Debtor knowingly and fraudulently attempted to conceal the asset, and revoked his discharge. *Id.* Undaunted, the Debtor moved to amend his schedules to claim the worker's compensation benefits as exempt property, but the Bankruptcy Court disallowed the exemption, holding that "fraudulent concealment of an asset works as a forfeiture of exemption rights." *Id.* at 868. The Seventh Circuit affirmed, referencing the following as sufficiently conclusive of the debtor's bad faith: 1) failing to list his worker's compensation benefits and the personal injury action as assets in his bankruptcy schedules; 2) failing to notify his personal injury attorney of the bankruptcy, and failing to inform his bankruptcy attorney of the personal injury claims; 3) failing to inform the trustee about the proceeds received from the personal injury and worker's compensation claims; and 4) based upon the record and the debtor's conduct, it could reasonably be inferred that he had no intention of reporting the personal injury settlement to the bankruptcy court, absent the Trustee's eventual discovery of the asset. *Id.* at 873.

Like the Debtor in *Yonikus,* St. Angelo did not list his personal injury claim as either an asset of the estate or as exempt property. Culpability, and the seriousness of these intentional omissions are compounded by the fact that St. Angelo filed three consecutive sets of bankruptcy schedules, and not once was the claim properly or fairly identified. In this case the Debtor's repeated failure to adequately schedule this claim has not been satisfactorily explained, and his attempt to shift blame to his attorney is rejected. "[E]ven the advice of counsel is not a defense when it is transparently plain that the property should be scheduled." *In re Mascolo,* 505 F.2d 274, 277 n. 4 (1st Cir.1974).

St. Angelo's personal injury claim was settled in July 1993,[4] but he made no mention of this at the July 27, 1993, § 341 examination conducted by the Trustee. In fact, there was no disclosure of the settlement until after the Trustee became aware of its existence, and eighteen months after the claim was settled. It is painfully obvious that, except for the Trustee's unexpected receipt of the settle-

---

**3.** St. Angelo's Statement of Financial Affairs is not confusing—it is outright deceptive. The phrase "Debtor has not pursued," implies or suggests that the claim was valueless and not worth scheduling as an asset. The statement in Schedule F, listing the Aetna claim as a "set off" of $100,000 against Aetna's claim against the Debtor, is also misleading, and there is no way to estimate the amount of the claim, or whether St. Angelo was the plaintiff or defendant.

**4.** See Consent Order, paragraph 2, Trustee's Exhibit E.

ment proceeds, St. Angelo would never have disclosed the existence of this asset to the Court or his creditors. We agree entirely with, and adopt the following discussion and analysis of this kind of conduct:

> The [debtor's] omissions from the initial list suggest that ... [he] meant to hide assets if ... [he] could get away with it.... The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.... When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion. So, here, it is too late for ... [St. Angelo] to start over and ask the court to apportion the proceeds as if ... [he] had filed a complete schedule in the first instance.

*Payne v. Wood,* 775 F.2d 202, 205 (7th Cir. 1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

Mr. St. Angelo was neither credible nor persuasive in his explanation that when he put in his schedules "not being pursued," what he meant was that "he was not pursuing the matter personally, but that he was leaving it up to his attorney." This is one of the least believable excuses we have ever heard, and the Debtor should be embarrassed to have proposed it. Accordingly, we conclude that the Debtor's attempt to conceal the personal injury settlement was willful and fraudulent, and is an absolute bar to any exemption he may claim in the proceeds.

For the reasons stated, the Trustee's Objection to the Debtor's claim of exempt property is SUSTAINED, and the Debtor's claim to $41,515 of the personal injury settlement proceeds, as exempt property, is DENIED. Because this ruling is dispositive of the matter before us, we will not address the remaining issues raised by the parties.

Enter Judgment consistent with this opinion.