**In re David M. GREGOIRE, Debtor.**

**Bankruptcy No. 95–12233.**

United States Bankruptcy Court,
D. Rhode Island.

May 29, 1997.

Russell Raskin, Raskin & Berman, Providence, RI, for debtor.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, Chapter 7 Trustee.

*OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION*

ARTHUR N. VOLOLATO, Bankruptcy Judge.

Heard on January 8, 10, and 21, 1997 on: (1) the Trustee's Motion to Vacate an endorsement Order granting the Debtor's Motion to Amend Schedules B and C; and (2) the Trustee's Objection to the Debtor's claim of exemption. The Trustee contends: (1) that the Debtor's attempt to exempt the proceeds of a $35,000 personal injury settlement is time barred; and (2) that the Debtor and his attorney acted in bad faith by failing and/or refusing to provide the Trustee information regarding the claim, and by attempting to improperly classify the asset as a (fully exempt) worker's compensation claim. Alternatively, the Trustee argues that none of the settlement proceeds are "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss" under 11 U.S.C. § 522(d)(11)(E).

Upon consideration, we adopt all of the Trustee's arguments and reject all of the Debtor's arguments. Accordingly, for the reasons stated below, the Order granting the Debtor's Motion to Amend Schedule C is VACATED, and the Debtor's claim of exemption of the personal injury settlement proceeds is DENIED.

*FINDINGS OF FACT AND
CONCLUSIONS OF
LAW*

On February 7, 1995, while working as a fork lift operator for Osram Sylvania, Inc., David Gregoire was injured. A tractor trailer truck owned and operated by an employee of Danis Transport Corporation struck the fork lift, knocking Mr. Gregoire to the ground, causing various personal injuries. Gregoire retained Paul A. d'Oliveira, Esq., as his personal injury lawyer, and d'Oliveira commenced two actions—a worker's compensation claim against the Debtor's employer, Osram Sylvania, and a third-party personal injury action against Danis Transport. Gregoire was unable to work for several months and began to have financial difficulties, so in the summer of 1995, Mr. d'Oliveira referred Gregoire to bankruptcy counsel, Russell Raskin, Esq.

On July 28, 1995, Mr. Raskin met with Gregoire, and on September 11, 1995, filed the instant Chapter 7 petition. In Schedule C, the Debtor claimed, *inter alia,* the following exemption:

| Description of Property | Value of Claimed Exemption |
|---|---|
| Specify law providing each exemption | Current market value of property Without deducting exemption |

### WORKERS' COMPENSATION CLAIM AGAINST DANIS TRANSPORT [sic]

| Debtor's interest: Unknown | Value exempt: Unknown |
|---|---|
| Law: | to the extent of value |

Attorney Raskin testified that he did not know at the time he filed the bankruptcy petition that the worker's compensation claim had been settled, and that what the Debtor really had was a third-party personal injury claim against Danis Transport.[1] Mr. Raskin also testified that in September 1995 he did not appreciate or understand the difference, in a bankruptcy context, between a worker's compensation claim and a third-party personal injury claim—a representation we find very difficult to accept, given counsel's expertise and experience before this Court.

On November 3, 1995, at the Section 341 meeting the Trustee quickly discovered the true nature of the Debtor's pending claim—i.e., a personal injury cause of action arising out of the negligence of a third party—Danis Transport. It is absolutely uncontrovertible that at the conclusion of the § 341 meeting on November 3, 1995, Mr. Raskin was fully cognizant of the existence and significance of the third-party personal injury cause of action. Yet, he did nothing to correct the misleading information in Schedules B and C until more than one year later, on November 14, 1996, when he filed a Motion to Amend. It is what transpired during the intervening year that is the basis for the Trustee's success in this dispute.

Shortly after the Section 341 meeting on November 9, 1995, the Trustee wrote to the Debtor's personal injury attorney, Mr. d'Oliveira, asking him to report the status of the personal injury claim. See Trustee's Exhibit 2. Getting no response, the Trustee sent three additional letters seeking the same information, see Trustee's Exhibits 4, 7, and 9. The only response he received was a telephone call from Mr. d'Oliveira's paralegal assistant, who was unable to furnish adequate information about the claim. Mr. d'Oliveira testified, and we believe, that he spoke with Mr. Raskin after receiving each of the Trustee's requests, and was assured that "he (Raskin) would take care of the matter." Mr. Raskin confirmed that he gave these assurances to d'Oliveira and, admittedly, did not contact or furnish any information to the Trustee, as promised.

Finally, frustrated by what he (correctly) perceived as being "stonewalled," the Trustee on March 8, 1996, filed a Motion for Order in Aid of Administration, asking the Court to compel d'Oliveira to produce the information requested. See Docket # 7. On March 21, 1996, the same date the Trustee's motion was granted, Mr. Raskin finally forwarded the heretofore undisclosed information to the Trustee. See March 19, 1996 Raskin letter, Docket # 10.[2] Satisfied that the failure to provide the requested information was not the fault of Attorney d'Oliveira, the Trustee filed an application to employ him as special counsel to conclude the settlement of the personal injury claim, and on August 15, 1996, a Motion to Compromise the claim for $35,000 was filed. On October 2, 1996, the settlement was approved and the Debtor was ordered to file *"amended Schedules B and C*

---

1. Classification of a claim as a worker's compensation claim, as opposed to a personal injury claim, produces very different results. A debtor's right to receive "a disability, illness, or unemployment benefit" is fully exempt, while in the negligence action a maximum of only $15,000 may be exempt from a payment "on account of personal bodily injury, *not including pain and suffering or compensation for actual pecuniary loss.*" (Emphasis added.) *Compare* 11 U.S.C. § 522(d)(10)(C) with 11 U.S.C. § 522(d)(11)(D).

Indeed, in many negligence recoveries for personal injury, *none* of the proceeds are exempt—a fact well known in the bankruptcy legal community.

2. Among the information received by the Trustee was the fact that on February 8, 1996, the Debtor had tentatively settled the personal injury action for $35,000. *See* Trustee's Exhibit 8.

*within 10 days."* *See* Endorsement Order dated October 2, 1996, Docket #13 (emphasis added). It was not until forty-three days later, on November 14, 1996, that Mr. Raskin filed a Motion to Amend, and where *for the first time,* amended Schedule B lists the personal injury claim against "Danis Transport" [sic] with a value of $35,000. In his Schedule C the Debtor claims $16,348 of the settlement as exempt under 11 U.S.C. §§ 522(d)(11)(D) and (d)(5). On November 18, 1996, through clerical inadvertence, the Motion to Amend was granted. This is the Order the Trustee wishes to have vacated, (1) on the ground that he was not allowed a reasonable time within which to object, and (2) that based on the facts and the law the Debtor is not entitled to the exemption, anyway.

Rhode Island Local Bankr.R. 10(c) allows a ten day objection period.[3] The Trustee's objection was timely filed, within five days, but through no fault of his own, he ran afoul of this Court's practice to administratively grant motions to amend soon after they are filed, and to treat any subsequently filed objection as a motion to vacate. In the circumstances, the November 18, 1996 endorsement order is VACATED, pursuant to R.I. Local Bankr.R. 10, and we consider the merits of the motion to amend.

### THE MERITS

Under Federal Rule of Bankruptcy Procedure 1009, a debtor may amend a voluntary petition as a matter of course any time before the case is closed. *See In re Yonikus,* 996 F.2d 866, 871–72 (7th Cir.1993); *Lucius v. McLemore,* 741 F.2d 125, 126 (6th Cir.1984). "This language comports with the well-established principle that exemptions should be liberally construed in furtherance of the debtor's right to a 'fresh start,' *see In re Magallanes,* 96 B.R. 253, 256 (9th Cir.BAP 1988); *In re Corbi,* 149 B.R. 325, 329 (Bankr. E.D.N.Y.1993), and absent bad faith or prejudice to creditors, courts have little or no discretion to deny leave to amend a claim of exemption." *In re St. Angelo,* 189 B.R. 24, 26 (Bankr.D.R.I.1995). However, a debtor must meet "the first indispensable precondition to a valid claim of exemptions: a *timely* claim of exemptions." *Petit v. Fessenden (In re Petit),* 80 F.3d 29, 32 (1st Cir.1996).

In *Petit* the debtor filed her statement of affairs and schedules, including Schedule C, Property Claimed as Exempt, beyond the deadline imposed by Fed. R. Bankr.P. 1007(c),[4] claiming as exempt the entire proceeds of a lawsuit pending against Key Bank, with an alleged estimated value of $25 million. The Court held that untimely exemption claims are not entitled to automatic allowance under Fed. R. Bankr.P. 4003(a), which allows the exemption if it is not timely controverted. *Petit* 80 F.3d at 32–33. The *Petit* Court also held that the debtor's exemption claim was untimely because it was not filed "within 15 days after entry of the order of relief" as required by Fed R. Bankr.P. 1007(c). *Id.* And finally, the Court noted that the debtor compounded her problems by failing to comply with a bankruptcy court order requiring the filing of all schedules twenty-eight days after the expiration of the original fifteen day period prescribed by Rule 1007. *Id.* While the facts in the instant dispute are not identical to those in *Petit,* that case is instructional and supports the result.

In this case, Schedules B and C were inaccurate and misleading from the time the petition was filed, Debtor's counsel was aware of the inaccuracy as early as November 3, 1995, but did nothing to correct the problem for over a year. In addition to improperly describing and scheduling the asset in question, the Debtor failed to list any statutory basis for the claimed exemption. Section 521 of the Bankruptcy Code places an affirmative duty on the Debtor to schedule assets and liabilities. *See* 11 U.S.C. § 521(1).

3. R.I. Local Bankr.R. 10(c) states:
   (c) Within ten (10) days after service (twenty (20) days for the U.S. Government officers and agencies thereof), any party against whom a "pleading" is filed, or any other party to the action who objects to the relief sought therein, shall serve and file an objection to that pleading.

4. Under this Rule, a debtor must file all schedules "within 15 days after entry of the order of relief."

Debtor's counsel has missed the mark both as to the letter and spirit of these requirements, and made things worse by failing to update and correct the schedules when the errors and omissions became undeniably obvious at the § 341 meeting. *See Kelly v. Giguere (In re Giguere),* 165 B.R. 531, 536 (Bankr.D.R.I.1994) (debtor's attorney has a continuing obligation to update schedules once new information becomes available); Fed. R. Bankr.P. 1007(h) (requiring a debtor who acquires or becomes entitled to acquire any interest in property as provided by Code Section 541(a)(5) to file supplemental schedules and to claim any exemptions *within ten days* ). The final straw in the pattern of nondisclosure in this case is the Debtor's disregard of our October 2, 1996 Order requiring amended Schedules B and C *within ten days.*[5] The Debtor's claim of exemption is clearly untimely, *see Petit,* 80 F.3d at 33, and based upon the totality of circumstances, the Debtor's request to amend Schedule C is DENIED.[6] The amendment to Schedule B properly describes, for the first time, the asset in question, so the Motion to Amend Schedule B is GRANTED.

▪▪▪ For possible appellate purposes, and in the event the claimed exemption is found to have been timely filed by the reviewing court, we also conclude that none of the $35,000 settlement proceeds are "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss" under 11 U.S.C. § 522(d)(11)(D). The legislative history explains that:

> This provision in subparagraph (D)(11) is designed to cover payments in compensation of actual bodily injury, such as loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and

suffering, or loss of earnings. Those items are handled separately by the bill.

H.R. No. 95–595, 95th Cong. 1st Sess. 361–62 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. While neither the statute nor its legislative history are noteworthy for clarity, it appears that the exemption is limited to payments made specifically to compensate for permanent injuries suffered by the debtor, *see In re Marcus,* 172 B.R. 502 (Bankr. D.Conn.1994), and while the Trustee has the burden of proving that exemptions are not properly claimed, the initial burden is with the Debtor to establish that the exemption, as claimed, is of the type covered by the statute. Fed. R. Bankr.P. 4003(c).

With that hurdle in mind, the Debtor points to an MRI report dated April 20, 1995, which states that the Debtor has "[m]inimal right sided disc bulge at L4–5." d'Oliveira Exhibit B. In opposition, the Trustee offered a letter from the Debtor's treating physician, Stephan Deutsch, M.D., who says: "I would interpret the MRI as negative. I find no evidence of a herniated disc or any evidence of spinal stenosis." Trustee's Exhibit # 17. The only other evidence as to permanency[7] was the Debtor's testimony that he "still has symptoms from the accident," that "he cannot tie his shoes on some days," that at certain times "he does not have full range of motion," and that sometimes he "does not sleep good." Dr. Deutsch does not suggest the presence of permanent injury, and in fact interprets the MRI as negative. The Debtor eventually returned to work, and there is nothing before us to show that the payment is for anything other than pain and suffering and actual pecuniary loss, i.e., lost wages. Those items clearly are not exempt. *See* 11 U.S.C. § 522(d)(11)(D).

Based on the entire record, we conclude that the Trustee has sustained his burden of

---

**5.** There is no issue as to the Debtor's receipt of this Order.

**6.** Although it has not been argued on the Debtor's behalf, we will touch the base with the comment "that the acts or omissions of counsel are visited upon the client" and that while this rule, applied inflexibly, produces results that are at times unpalatable, no other approach would be as workable. *United States v. One Lot of*

*$25,721.00,* 938 F.2d 1417, 1422 (1st Cir.1991); *see also Link v. Wabash* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

**7.** Attorney d'Oliveira began testifying as to the permanency of the Debtor's injuries, however, after objection and upon reconsideration, all of Attorney d'Oliveira's testimony concerning permanency was stricken as incompetent.

showing that the Debtor is not entitled to the exemption as claimed.

Enter Judgment consistent with this opinion.

Dated at Providence, Rhode Island, this day of May, 1997.

### JUDGMENT

In accordance with Fed. R. Bankr.P. 9021, and for the reasons set forth in the DECISION AND ORDER issued by the Honorable Arthur N. Votolato, United States Bankruptcy Judge, on May 29, 1997, Judgment is hereby entered.